Ruth EDWARDS, et al., Plaintiffs,

v.

Jack E. McCORMICK, Defendant.

No. C2–99–1343.

United States District Court,
S.D. Ohio,
Eastern Division.

March 30, 2001.

Edward Alan Icove, Smith & Condeni Co., LPA, Cleveland, OH, Gary Michael Smith, Graham McClelland, Ransbottom, Dover, OH, for Plaintiffs.

Lawrence A. Sutter, Reminger & Reminger, Cleveland, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment on Claims under the Federal Debt Collection Practices Act and Ohio Consumer Sales Practices Act. Plaintiffs seek a finding that Defendant McCormick is liable as a matter of law for several statutory violations. For the following reasons, Plaintiffs' Motion is **GRANTED** in part and **DENIED** in part.

### I. Causes of Action Asserted

Plaintiffs bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), and Ohio's Consumer Sales Practices Act, OHIO REV.CODE § 1345.01 ("OCSPA"). Plaintiff Ruth Edwards ("Plaintiff Edwards") is acting on her own behalf and on behalf of the estate of her deceased spouse, Thomas C. Edwards.[1]

---

1. Plaintiff Edwards also sought to represent a putative class of plaintiffs, but Plaintiffs' Motion To Certify Class Action was denied by this Court on October 31, 2000.

Plaintiffs allege that Mr. McCormick violated the FDCPA: (1) by failing to provide Plaintiffs with proper validation notices; (2) by demanding that Plaintiff Edwards pay debts she allegedly did not owe; (3) by threatening to take action that could not legally be taken, or that was not intended to be taken, in connection with the collection of debts; (4) by using false representations and deceptive means to attempt to collect a judgment; and (5) by sending an "unfair" collection letter. Plaintiffs further claim that Mr. McCormick acted as a "supplier" as defined by the OCSPA and knowingly committed unfair, deceptive and unconscionable acts and/or practices in violation of the OCSPA. Finally, Plaintiffs assert that each violation of the FDCPA also constitutes a violation of the OCSPA, relying primarily on *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260 (1984), and *State ex rel. Celebrezze v. Scandinavian Health Spa, Inc.*, No. CV863–1158, 1986 WL 363150 (Ohio C.P. March 31, 1986).

Defendant McCormick contends that the letter with the alleged misrepresentations [2] was sent to the Edwards family due to a clerical error, despite the procedures he had in place which were reasonably adapted to prevent such errors. Thus, Mr. McCormick seeks to interpose the bona fide error defense provided in the FDCPA with respect to Plaintiffs' federal claims.[3] With respect to Plaintiffs' claim that he misrepresented the legal obligation of Mrs. Edwards to pay for medical services rendered to her husband, Defendant McCormick also challenges the assertion of Plaintiff Edwards that she was not legally responsible for the underlying debts in question.

## II. Factual Background

Prior to his death, Mr. Edwards received medical treatment from the physicians and health care personnel of Hocking Valley Community Hospital ("Hocking Valley"). As of June 29, 1998, his outstanding balance was $7,058.88. On June 29, 1998, Physicians Credit Bureau ("PCB") contracted with Mr. McCormick, an attorney, to collect this debt on behalf of Hocking Valley. The "Uniform Attorney Forwarding Contract" sent by PCB to Defendant McCormick listed Ruth Edwards as the debtor. On August 27, 1998, PCB referred to Mr. McCormick an account in the amount of $4,069.81 owed by Mr. and Mrs. Edwards to Hocking Valley. This "Uniform Attorney Forwarding Contract" also listed Ruth Edwards as the debtor, and additionally noted on the letter's "Debtor's Employer" line: "property owned by Thomas C. Edwards." Treatment rendered to Mrs. Edwards accounted for $997.42 of this unpaid bill. At no point did Ruth Edwards ever sign as a financially responsible party for services rendered to Thomas Edwards, nor did Thomas Edwards so sign for services rendered to Ruth Edwards. On September 3, 1998, Mr. McCormick sent a letter to Mrs. Edwards which stated that the "total amount due and owing by [Mrs. Edwards to Hocking Valley was] $4069.81." The letter included the following language:

> Unless you dispute the validity of this debt within thirty (30) days after receipt of this notice, the debt will be assumed to be valid. If you notify this office in writing within that thirty (30) period [sic] that the debt is disputed, verification of the debt will be obtained and mailed to you. Also, if the name and

---

**2.** *See* discussion *infra* Parts II, III.

**3.** While Mr. McCormick concedes that he is a supplier for the purposes of the OCSPA and that the transactions at issue here were cov-

ered by the OCSPA, he asserts that the bona fide error defense would serve as a shield from any OCSPA claims alleged to have arisen out of FDCPA violations.

address of the original creditor is different from the creditor above, upon written request within the thirty (30) day period, you will be provided with the name and address of the original creditor.

Mrs. Edwards did not respond to the letter.

Mr. McCormick consolidated the $4,069.81 account with the $7,058.88 account and, on October 19, 1998, initiated a legal action against Plaintiffs seeking $11,128.69 for medical services and goods supplied on credit by Hocking Valley to Mr. and Mrs. Edwards. Mr. McCormick served Plaintiffs with the complaint on or about October 21, 1998. A default judgment was rendered against Plaintiffs. On December 14, 1998, a judgment lien was filed in the Hocking County Court of Common Pleas in favor of Hocking Valley, creating a lien on all of the Edwards's real property in the amount of $7,058.88 plus interest of ten percent per annum and the legal costs of the action.[4]

On or about December 16, 1998, Mr. McCormick sent a letter addressed to "Thomas C. and Ruth Edwards" to the Edwards residence which stated, in pertinent part:

> On December 14, 1998 a judgement lien in the amount of $7,058.88 plus interest at 10% per annum and costs was filed in the Hocking County Court of Common Pleas in favor of [Hocking Valley]. This creates a lien on all real property in which either or both of you have an interest, and if foreclosed upon may result in the forced sale of those properties. If you wish to avoid this you must contact this office to arrange payment of this judgement.

Defendant McCormick asserted in his deposition that this letter is of a type Mr. McCormick uses to collect debts from business judgment creditors, and was sent to the Edwards residence as a result of a clerical or ministerial error made by his secretary, Lolita Denton. Ms. Denton testified in her deposition that she is unfamiliar with the type of letter at issue in this case and has no knowledge of other letters like it on file used to collect either consumer or commercial debts. Plaintiff Edwards did not make any payment arrangements in response to Mr. McCormick's letter regarding the judgment lien. Neither Mr. McCormick nor Hocking Valley took any action to foreclose on the Edwards's home prior to Hocking Valley's settling out of this case.

## III. Analysis

The Court will first consider Plaintiffs' federal claims, and then will evaluate Plaintiffs' claims arising under the OCSPA.

### A. FDCPA Claims

The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Where a debt collector's allegedly deceptive communication is involved, "a court must determine whether the least sophisticated consumer would be deceived by the collection agency's [communications]...." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992) (internal quotations omitted). As a preliminary matter, the Court notes that attorney debt collectors engaged in litigation are subject to the strictures of the

---

4. Mr. McCormick took a lien of $7,058.88 instead of $11,128.69 because, following a series of confusing phone conversations with Fred Shell of PCB, he had mistakenly come to believe that the $4,069.81 debt had been included in the $7,058.88 debt.

FDCPA. *Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In the matter *sub judice,* Defendant McCormick does not dispute that he is a "debt collector" as contemplated by the FDCPA, because he is "a lawyer who 'regularly' tries to obtain payment of consumer debts through legal proceedings." *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 409 (6th Cir.1998) (citing *Heintz,* 514 U.S. at 291–94, 115 S.Ct. 1489).

In this case, Plaintiffs contend that Defendant McCormick violated 15 U.S.C. § 1692(g)(a) by not sending Mr. Edwards a validation notice for the $4,069.81 account and by sending neither Mr. Edwards nor Mrs. Edwards a validation notice for the $7,058.88 account. Plaintiffs also allege that Mr. McCormick violated subsections (2), (5) and (10) of § 1692e. Those subsections prohibit:

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

.    .    .    .    .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

.    .    .    .    .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2), (5) & (10). Finally, Plaintiffs assert that Defendant McCor-

mick's December 16 communication was an "unfair" collection letter, in violation of 15 U.S.C. § 1692f.

The FDCPA contains a bona fide error defense that can shelter a debt collector from liability arising out of actions which would otherwise violate the statute. 15 U.S.C. § 1692k(c).[5] Under that defense, a debt collector cannot be held liable under the FDCPA "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." *Id.* In this case, Defendant McCormick claims that the protection offered by the bona fide error defense shields him from any liability to Plaintiffs.

### 1. Bona Fide Error Defense: 15 U.S.C. § 1692k(c)

There is a single mistake to which Defendant points as the bona fide error he seeks to interpose between himself and Plaintiffs' claims under §§ 1692(g)(a), 1692e(5) & (10), and 1692f. For the sake of efficiency, the Court will therefore consider Defendant's bona fide error defense with respect to those claims prior to considering the claims themselves.[6]

Stripped to its essential form, the mistake upon which Defendant McCormick relies in his invocation of § 1692k(c) is one of debt-classification. Viewing the evidence in the light most favorable to the non-movant Defendant, at or near the inception of Mr. McCormick's attempt to recover money owed to Hocking Valley by Mr. and/or Mrs. Edwards, the Edwardses

---

**5.** § 1692k(c) provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of

procedures reasonably adapted to avoid any such error.

*Id.*

**6.** In Part III.A.3, *infra,* the Court will separately consider Defendant's reliance on the bona fide error defense with respect to Plaintiffs' § 1692e(2) claim.

somehow slipped out of Mr. McCormick's "consumer debt" track and into his "commercial debt" track. This incorrect classification was the single mistake which both triggered the December 16 foreclosure letter—the basis for Plaintiffs' claims under §§ 1692e(5) & (10), and 1692f—and kept Defendant from sending out the validation notices required to be sent to consumer debtors by § 1692(g)(a), but not required to be sent to commercial debtors.

The incorrect classification of the Edwardses as commercial debtors rather than consumer debtors could have occurred due to Mr. McCormick's misapprehension about the status of their account— that is, Mr. McCormick could have been mistaken as to the *applicability* of the FDCPA—or the error could have occurred as a result of a clerical snafu—the Edwards file inadvertently being dropped into "Box B" instead of "Box A." Were the mistake an error in legal judgment, it could not be erased by § 1692k(c), because the Sixth Circuit treats the FDCPA as a strict liability statute. *See Frey v. Gangwish II*, 970 F.2d 1516, 1518–19 (6th Cir. 1992) (finding liability for a technical violation of § 1692g(a) when debt collector, who had had prior communications with debtor's attorney, failed to send out validation notice after first communication directly with debtor). Further, the Sixth Circuit has explicitly held that "the bona fide error defense applies only to clerical errors." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir.1992).

When the bona fide error defense is potentially available to the violator because the mistake in question is indeed a clerical one, the proponent of the defense must prove by a preponderance of evidence: (1) the violation was not intentional; (2) the violation resulted from a bona fide error; and (3) the violator maintained procedures

reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c). Plaintiffs here assert that Defendant has failed to carry his burden with respect to each element of the defense.

Plaintiffs claim that Mr. McCormick's sending of the foreclosure letter and withholding of the validation notices was intentional because he had discussed the Edwards's account with PCB prior to the relevant action and omissions. The Court finds this argument unavailing. If accepted, Plaintiffs' line of reasoning would eviscerate the bona fide error defense in that any actual knowledge regarding a debtor's account would render a subsequent violation of the FDCPA "intentional." Furthermore, such a reading of the intent requirement was implicitly rejected by the Sixth Circuit in *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 401–02 (6th Cir.1998) (finding that debt collector was protected by the bona fide error defense despite its actual knowledge of debtor's account in holding that "[t]he debt collector must only show that the violation was unintentional, not that the communication itself was unintentional.").

Mr. McCormick's deposition is replete with averments that the act and omissions in question were unintentional, and Plaintiffs have produced no countervailing evidence. The Court therefore finds that Mr. McCormick has satisfied the first requirement of the bona fide error defense with respect to Plaintiffs' claims under §§ 1692(g)(a), 1692e(5) & (10), and 1692f.

Plaintiffs' attacks on Mr. McCormick's good faith with respect to those claims fare significantly better. As to the December 16 letter,[7] Mr. McCormick admits that he never files foreclosures, admits that he knew on December 16, 1998 that Ohio Revised Code section 2329.66(A)(1)(a) for-

---

**7.** *See supra* Part II.

bids a debt collector from foreclosing on the homestead of a consumer debtor, admits that he signed the letter, and surmises that he must not have read it before signing. The Court finds that such a scenario does not add up to a "bona fide error."[8] The Court therefore determines that Mr. McCormick has failed to carry his burden with respect to the second requirement of the bona fide error defense, as it relates to Plaintiffs' claims under §§ 1692e(5) & (10), and 1692f.

A different analysis is required under this prong with respect to Plaintiffs' claims arising out of § 1692(g)(a). It is undisputed that Defendant's September 3 letter to Mrs. Edwards complied with the validation notice strictures of the FDCPA. Plaintiffs' claims under § 1692(g)(a) spring from Defendant's failure to send additional validation notices when he essentially added a second party and a second debt to her account. Defendant has adduced evidence tending to show that these omissions occurred because the "validation notice box" in Mrs. Edwards' file had already been "checked," and thus there was no operative mechanism to trigger the creation of additional validation notice letters. Plaintiffs have provided no evidence to the contrary. Rather than requiring Defendant to sign and send a violative letter, any of Mr. McCormick's infractions here occurred as a result of no action on his part, and thus are not inconsistent with the concept of "bona fide error." The Court finds that Defendant McCormick has satisfied prong two of § 1692k(c) with respect to Plaintiffs' claims brought under § 1692(g)(a).

With respect to all of Plaintiffs' claims discussed in this section, however, Defendant has completely failed to satisfy the third prong of § 1692k(c): that he maintained "procedures reasonably adapted to avoid any such error." When Lolita Denton, Mr. McCormick's secretary, was questioned during her deposition as to what "quality controls" Mr. McCormick used to ensure the propriety of any collection action taken, she responded:

A. Mr. McCormick gives me the information. And then I give it back to him for signature, and he reviews it.

Q. And that's the double-check that's used before a collection action is implemented?

A. Yes.

While having two sets of eyes go over each relevant document likely would be a procedure within the universe of those contemplated by § 1692k(c) as "reasonably adapted to avoid" error, Mr. McCormick's deposition testimony belies the notion that such a system is actually utilized in his office:

A. She puts a batch of letters in front of me and she says these are ready to go, and she's checked the amounts. And sometimes I look at it. I'll be quite candid with you, sometimes I don't. I depend on her. She'll bring me a batch of form letters which this is in and she'll throw them on my desk and say, here, sign these. Did I look at this particular number when I signed this letter? Maybe, maybe not.

\* \* \* \* \* \*

Q. So it's basically you delegate to her certain responsibilities and you don't double-check those particular responsibilities because she's really good at what she does?

---

**8.** Black's Law Dictionary defines "bona fide" as: "Made in good faith; inadvertently; without fraud or deceit." BLACK'S LAW DICTIONARY 168 (7th ed.1999). It defines "good faith" to include: "faithfulness to one's duty or obligation." *Id.* at 701. Clearly, an attorney who signs without reading a letter which grossly misstates both the law and his intentions has not acted in good faith.

A. Yes. Yes. That's correct.

Q. So, for example, you wouldn't have double-checked this particular number to see if this was the correct number which was the total amount due and owing by Mrs. Edwards?

A. That's correct.

Q. And likewise, you wouldn't have double-checked to see if one of these particular letters went out to Mr. Edwards?

A. That's correct.

\* \* \* \* \* \*

Q. What do you do to protect yourself, if anything, from using the wrong form letter?

A. Lita Denton.

Though there is no doubt that a principal may lawfully assign to his agent the responsibility of performing the "error-catching" procedure(s) required to invoke the protection of § 1692k(c), where the principal himself has an essential role *in* the actual procedure, an abdication of that responsibility necessarily destroys the effectiveness of the procedure itself. Such is the case in the present matter: Mr. McCormick was supposed to be the "double-checker," but Mr. McCormick only double-checked when the spirit moved him. As Defendant has pointed to no other procedure "reasonably adapted to avoid" error, this Court finds that he has not carried his burden with respect to the third prong of the bona fide error defense.

Thus, the Court finds that the bona fide error defense embodied in 15 U.S.C. § 1692k(c) is not available to Defendant with respect to Plaintiffs' claims under §§ 1692(g)(a), 1692e(5) & (10), and 1692f.

### 2. Validation Notices: 15 U.S.C. § 1692g(a)

Section 1692g(a) dictates:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.*

In the present case, Defendant McCormick admits that he never sent such a written notice to either Mr. Edwards or Mrs. Edwards with respect to the $7,058.88 account, and that he never sent such a notice to Mr. Edwards with respect to the $4,069.81 account. Since the FDCPA is a strict liability statute, *Frey*, 970 F.2d at 1518–19, and since this Court has already determined that § 1692k(c) is inapplicable to Plaintiffs' claims under § 1692g(a), *supra* Part III.A.1, the Court hereby finds that Defendant violated § 1692g(a) by failing to send Plaintiffs the

validation notices mandated by that section, and **GRANTS** Plaintiffs' Motion for Partial Summary Judgment with respect to their § 1692g(a) claims.

### 3. Legal Status of Debts: 15 U.S.C. § 1692e(2)

Section 1692e(2) forbids a debt collector from making:

> false representation of—
>
> (A) the character, amount, or legal status of any debt; or
>
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e(2). In the present matter, Plaintiffs contend that Mr. McCormick violated § 1692e(2)(A) by falsely representing that Mrs. Edwards had the legal obligation to pay debts she allegedly did not owe. Plaintiffs assert that because Mrs. Edwards never signed as a financially responsible party for services rendered by Hocking Valley to her husband, she cannot legally be held accountable for his debts. Therefore, demanding that she remit $11,128.69 to Hocking Valley, when ser-

vices extended to her personally accounted for only $997.42 of that sum, amounted to a violation of § 1692e(2).

■ Mr. McCormick offers a two-prong defense to this claim: first, he asserts that under *Ohio State University Hospital v. Kinkaid,* 48 Ohio St.3d 78, 549 N.E.2d 517 (1990), Mrs. Edwards was indeed liable for the services rendered by Hocking Valley to her husband; second, he claims that he is allowed to rely upon his client—in this case, PCB—to provide him with accurate information as to amounts of debts and responsible parties, and that he is thus entitled to the bona fide error defense embodied in § 1692k(c) for any causes of action arising out of inaccuracies in such information. Plaintiffs counter: first, that *Kinkaid* is inconsistent with the ECOA, and thus is preempted by the ECOA; and second, that Mr. McCormick was obligated personally to undertake a thorough investigation of Mrs. Edwards's liability for the accounts in question, but failed to do so.

Assuming without deciding that the ECOA does indeed preempt *Kinkaid* to the extent the two are inconsistent,[9] and

---

9. In *Kinkaid,* the Supreme Court of Ohio found that Ohio Revised Code section 3103.03 made a non-cosigner wife liable for the payment of hospital and medical expenses incurred by her husband before his death when, at the husband's death, his assets were insufficient to pay such expenses. *Kinkaid,* 549 N.E.2d at 518–19.

15 U.S.C. § 1691(a)(1) commands: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of ... marital status...." *Id.* Pursuant to § 1691b(a)(1), the Federal Reserve Board has prescribed regulations to carry out this dictate. One such regulation provides: "a creditor shall not require the signature of an applicant's spouse ..., other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1).

Plaintiffs' rather persuasive argument in this case is that since Hocking Valley could not have required Mrs. Edwards to sign for Mr. Edwards's credit at the front-end of his transaction with the hospital, certainly it cannot be allowed to treat her, at the back-end of the transaction, solely on the basis of her marital status, as if she *had* signed as a financially responsible party. To the extent *Kinkaid* reads Ohio Revised Code section 3103.03 to permit such conduct, Plaintiffs contend, it is preempted by the ECOA.

This Court agrees with Plaintiffs' analysis that section 3103.03 as interpreted in *Kinkaid* is inconsistent with the ECOA in that allows creditors to impose liability upon non-signing parties solely on the basis of their marital status. It is this Court's view that the ECOA would preempt *Kinkaid* under circumstances such as those presented here, were a decision on that point necessary. Section 3103.03, on its face, however, is not inconsistent with the ECOA. Because the Court disposes of Plain-

thus that Mrs. Edwards was not legally responsible for her husband's debts, this Court finds that Mr. McCormick is nonetheless shielded from liability on Plaintiffs' § 1692e(2) claims by the bona fide error defense. The Sixth Circuit has held that a debt collector may rely upon information provided by his client, and that § 1692k(c) will protect a debt collector who is not wilfully blind to the inaccuracy of such information from liability directly attributable to mistakes of the client. *Smith*, 953 F.2d at 1032.

In the present case, Mr. McCormick testified in his deposition that he specifically demanded and received assurances from PCB that Mrs. Edwards was indeed a financially responsible party—that Hocking Valley did not *consider* her a liable party merely because of her marital relationship with Thomas C. Edwards—before proceeding with any debt collection actions against her. Plaintiffs have adduced no countervailing evidence. Since any false representations as to Mrs. Edwards's legal obligation to pay the debts of her husband grew out of inaccurate information supplied by PCB, and reasonably relied upon by Mr. McCormick, this Court finds that Mr. McCormick is entitled to the FDCPA's bona fide error defense with respect to Plaintiffs' claims under § 1692e(2).

Thus, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment with respect to their § 1692e(2) claims, and **DISMISSES** those claims.

### 4. Improper Threat of Foreclosure: 15 U.S.C. § 1692e(5)

■ Section 1692e(5) prohibits a debt collector from making "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Plaintiffs assert that this statute was violated when Defendant mailed the December 16 letter, which Plaintiffs claim threatens to foreclose on their house-an action they insist could not legally be taken and was not intended to be taken.

Ohio Revised Code section 2329.66(A) dictates:

Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows: (1)(a) In the case of a judgment or order regarding money owed for health care services rendered or health care supplies provided to the person or a dependent of the person, one parcel or item of real or personal property that the person or a dependent of the person uses as a residence. Division (A)(1)(a) of this section does not preclude, affect, or invalidate the creation under this chapter of a judgment lien upon the exempted property but only delays the enforcement of the lien until the property is sold or otherwise transferred by the owner or in accordance with other applicable laws to a person or entity other than the surviving spouse or surviving minor children of the judgment debtor....

*Id.* Ohio Revised Code section 2329.66(A)(1)(a) thus provides a homestead exemption prohibiting health care creditors from foreclosing on the primary residence of their debtors. *Id.* Defendant McCormick does not contest that the provision is applicable in the present matter.

The December 16 letter stated, in pertinent part (with emphases added):

On December 14, 1998 a judgement lien in the amount of $7,058.88 plus interest at 10% per annum and costs was filed in the Hocking County·Court of Common Pleas in favor of [Hocking Val-

---

tiffs' § 1692c(2) claims pursuant to § 1692k(c), the resolution of the conflict be-

tween *Kincaid,* section 3103.03 and the ECOA is unnecessary.

ley]. This creates a lien on *all real property* in which either or both of you have an interest, and *if foreclosed upon may result in the forced sale of those properties. If you wish to avoid this you* **must** *contact this office to arrange payment of this judgement.*

Utilizing the "least sophisticated consumer" standard enunciated by the Sixth Circuit in *Smith,* 953 F.2d at 1028, this Court fails to see how the December 16 letter could be construed as anything other than a threat to foreclose upon all real property of Plaintiffs. In addition to such an action being prohibited by section 2329.66(A)(1)(a), Mr. McCormick's deposition testimony that he *never* forecloses upon the homes of consumer debtors is the only evidence before this Court as to his intention, or lack thereof, to foreclose upon the Edwards's residence.

The Court thus finds that Mr. McCormick violated § 1692e(5) in that he threatened Plaintiffs with an action which he had no intention of taking, and indeed which he could not legally take. As this Court has already determined that § 1692k(c) is inapplicable to Plaintiffs' claims under § 1692e(5), *supra* Part III.A.1, the Court hereby **GRANTS** Plaintiffs' Motion for Partial Summary Judgment with respect to their § 1692e(5) claims.

### 5. False Representation: 15 U.S.C. § 1692e(10)

Section 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Plaintiffs argue that Defendant's December 16 letter, in an attempt to collect a debt, falsely represented that Defendant had the right to foreclose upon and sell their home. This Court agrees, and finds that such is a violation of § 1692e(10). *See Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 25–26 (2d Cir.1989) (finding "a violation of section 1692e(5) and (10) [where the] clear import of the language, taken as a whole, is that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment.").

Since the Court has already determined that § 1692k(c) is inapplicable to Plaintiffs' claims under § 1692e(10), *supra* Part III. A.1, the Court hereby **GRANTS** Plaintiffs' Motion for Partial Summary Judgment with respect to their § 1692e(10) claims.

### 6. Unfair Debt Collection: 15 U.S.C. § 1692f

Section 1692f dictates: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* Plaintiffs here contend that the December 16 letter, which went out under Mr. McCormick's "Attorney at Law" letterhead, was "unfair" because it was signed by Mr. McCormick without being reviewed by him, in contravention of Ohio Disciplinary Rule 3–101(A) [10] as well as the ethical position taken by the American Bar Association.[11]

---

**10.** The disciplinary rule provides: "A lawyer shall not aid a non-lawyer in the unauthorized practice of law." *Id.*

**11.** ABA Formal Opinion 68 provides:
[A] lawyer has been given certain privileges by the state. Because of these privileges, letters of the character stated in the question, purporting to be written by attorneys have a greater weight than those written by laymen. But such privileges are strictly personal, granted only to those who are found through personal examination to measure up to the required standards. Public policy therefore requires that whatever correspondence purports to come from a lawyer in his official capacity must be at least passed upon and approved by him. He cannot delegate this duty of approval to one who has not been given the right to exercise the functions of a lawyer.

Though Plaintiffs have stated a colorable claim under § 1692f, the Court finds that the structure of the FDCPA counsels against granting Plaintiffs' Motion for Partial Summary Judgment on this count. While § 1692d prohibits "harassment or abuse," and § 1692e forbids "false or misleading representations," § 1692f serves a backstop function, catching those "unfair practices" which somehow manage to slip by §§ 1692d & 1692e. That is, " § 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F.Supp. 521, 528 (E.D.Pa.1996) (citing *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1461 n. 10 (C.D.Cal.1991)).

In the present case, the Court has already found the December 16 letter—signed without review by Mr. McCormick—to be violative of § 1692e(5) & (10). *See supra* Part III.A.4–5. There is therefore no need at this time to expand the reach of § 1692f to cover putative transgressions of ethical dictates. *See Adams*, 926 F.Supp. at 528 (granting summary judgment to defendants on § 1692f claim when same conduct had already been found unlawful under § 1692g).

Thus, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment with respect to their § 1692f claims, and **DISMISSES** those claims.

## B. Ohio Consumer Sales Practices Act Claims[12]

■ OHIO REV.CODE § 1345.02 provides:

> (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

*Id.* OHIO REV.CODE § 1345.03 dictates:

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

*Id.* The difference between an "unfair or deceptive act or practice," for purposes of the Ohio Revised Code, and an "unconscionable act or practice," can be understood through a reading of *Bennett v. Tri–State Collection Service*, No. 940002 (Cuyahoga Ct. C.P. July 23, 1976). In *Bennett*, the court found knowingly misstating the law with respect to the consumer's obligations to the creditor, as well as the exaggeration of remedies available to the creditor and the consequences to the consumer of nonpayment, to be deceptive; and contacting the consumer's employer, prior to obtaining judgment, and informing the employer of the creditor's intent to garnish the consumer's wages to be unconscionable. *Id.*

In the matter *sub judice*, the December 16 foreclosure letter clearly exaggerates the remedies available to the creditor and the consequences to the debtor of nonpayment. The Court therefore finds the letter to be "deceptive," in violation of OHIO REV.CODE § 1345.02.[13] Furthermore, the

---

ABA Comm. on Ethics and Grievances, Formal Op. 68 (1932).

**12.** As a preliminary matter, the Court notes that Defendant McCormick concedes that the OCSPA is applicable to the present case and that he is a "supplier" for the purposes of the statute.

**13.** Plaintiffs would have this Court find that any violation of the FDCPA is *per se* a viola-

tion of the OCSPA. In support they cite *State ex rel. Celebrezze v. Scandinavian Health Spa, Inc.*, No. CV863–1158, 1986 WL 363150, at *3 (holding that "[a] violation of 15 U.S.C. § 1692(d) is a violation of O.R.C. § 1345.02(A).") and *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260, 1261–62 (implying that the distant forum prohibition of the FDCPA is incorporated into OHIO REV.CODE § 1345.02(C)). Suggest-

Court rejects Defendant's argument that he should be protected from liability under the OCSPA by the bona fide error defense embodied in § 1692k(c) of the FDCPA. Even assuming, *arguendo*, that such a defense has been incorporated into the OCSPA, this Court has already ruled that Defendant cannot rely on it in matters relating to the December 16 foreclosure letter. *See supra* Part III.A.1. Therefore, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment with respect to their claims under Ohio Rev.Code § 1345.02.

The Court also finds, however, that Plaintiffs have not alleged, much less adduced evidence to support a finding of, actions of such egregiousness on the part of Defendant to rise to the level of unconscionability, as prohibited by Ohio Rev. Code § 1345.03. The Court therefore **DENIES** Plaintiffs' Motion for Partial Summary Judgment with respect to their claims under Ohio Rev.Code § 1345.03, and **DISMISSES** those claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** with respect to the following claims: that Defendant failed to provide proper validation notices, in violation of 15 U.S.C. § 1692g(a); that Defendant threatened to take action that could not legally

be taken, or that was not intended to be taken, in connection with the collection of debts, in violation of 15 U.S.C. § 1692e(5); and that Defendant used false representations and deceptive means to attempt to collect a judgment, in violation of both 15 U.S.C. § 1692e(10) and Ohio Revised Code section 1345.02. Plaintiffs' Motion is **DENIED** with respect to the following claims: that Defendant demanded Mrs. Edwards pay debts she allegedly did not owe, brought pursuant to 15 U.S.C. § 1692e(2); that Defendant's foreclosure letter constituted an "unfair" action, brought pursuant to 15 U.S.C. § 1692f; and that Defendant knowingly committed unconscionable acts and/or practices, brought pursuant to Ohio Revised Code section 1345.03. Plaintiffs' claims brought under 15 U.S.C. §§ 1692e(2) & 1692f and Ohio Revised Code section 1345.03 are **DISMISSED**.

**IT IS SO ORDERED.**

---

ing the opposite result is *Celebrezze v. Fred Godard Ford, Inc.,* 27 Ohio App.3d 301, 500 N.E.2d 881, 883–84 (1985) (holding that a violation of the Truth in Lending Act is not *per se* a violation of the OCSPA).

Since the Ohio courts have not spoken in unison on the issue of federal regulatory stat-

ute incorporation, and since this Court need not pass on the issue in order to find that Defendant has violated the OCSPA, the Court neither accepts nor rejects the position advanced by Plaintiffs.