Michael **DURTHALER,** Plaintiff,

v.

**ACCOUNTS RECEIVABLE MANAGEMENT, INC.,** Defendant.

**Case No. 2:10–cv–01068.**

United States District Court, S.D. Ohio, Eastern Division.

April 9, 2012.

Peter Cozmyk, Krohn & Moss, Ltd., David McColl Tannehill, North Royalton, OH, for Plaintiff.

Kevin R. Feazell, Cincinnati, OH, James R. Bedell, Moss & Barnett, P.A., Minneapolis, MN, for Defendant.

### OPINION AND ORDER

EDMUND A. SARGUS, JR., District Judge.

This matter is now before the Court on the Defendant's motion for summary judgment (Doc. No. 27), which is **GRANTED** and the Plaintiff's motion for partial summary judgment (Doc. No. 39), which is **DENIED.**

## I. BACKGROUND

This is an action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* The Plaintiff, Michael Durthaler, purchased a 2005 Chevrolet Colorado and financed the vehicle through Nuvell National Auto Finance ("Nuvell"). After several periods of failing to maintain current payments, the Plaintiff surrendered the vehicle to Nuvell in approximately June 2010. At that time, the Plaintiff owed approximately $13,000 on the vehicle.

In August 2010, the Defendant, Accounts Receivable Management ("ARM"), initiated contact with the Plaintiff in an effort to collect the outstanding balance owed to Nuvell. The Defendant made 32 telephone calls in an attempt to collect the debt owed by the Plaintiff. Two of the calls were made to the Plaintiff's roommate, who is also his landlord. Following the first call to his roommate, the Plaintiff requested that the Defendant not call that number again. After that request, the Defendant once again called the roommate. Thereafter, the Plaintiff telephoned the Defendant and asked it not to call his roommate and also informed it, *inter alia,* that he could not currently pay the debt. Am. Compl. Ex. A.

On November 15, 2011, the Defendant moved for summary judgment. (Doc. No. 27.) The Plaintiff filed his memorandum in opposition on December 23, 2011 (Doc. No. 44), and on January 6, 2012, the Defendant filed its reply brief (Doc. No 45). The Plaintiff filed a notice of supplemental authority to its memorandum in opposition on February 28, 2012. (Doc. No. 50.)

On November 29, 2011, the Plaintiff filed a motion for partial summary judgment (Doc. No. 39), and on December 20, 2011, the Defendant filed its memorandum in opposition (Doc. No. 43). The Plaintiff did not file a reply brief and the time to do so has passed.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be

drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In the instance case, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his or its own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d

240, 248 (6th Cir.1991) (quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.),* 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248.

## III. ANALYSIS

The Plaintiff alleges that the Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Congress enacted the FDCPA to protect consumers by eliminating abusive, deceptive, and unfair debt collection practices. *Barany–Snyder v. Weiner,* 539 F.3d 327, 332–33 (6th Cir.2008). The statute is " 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem." *Id.* at 333 (quoting *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992)). However, although "[t]here is abundant evidence of the abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress intended to preserve legitimate collections attempts through "[m]eans other than misrepresentation or other abusive debt collection practices." 15 U.S.C. § 1692(a), (c).

The Plaintiff filed claims for relief under the anti-harassment provision, 15 U.S.C. § 1692d, and the disclosure provision, 15 U.S.C. § 1692e(11) of the FDCPA.

### A. Anti–Harassment Provision of the FDCPA

Section 1692d of the FDCPA provides in relevant part that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Among the type of conduct prohibited by § 1692d is "[c]ausing a telephone to ring or engaging any

person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." "Courts have followed the Federal Trade Commission's interpretations, finding that the term 'repeatedly' means 'calling with excessive frequency under the circumstances,' and that 'continuously' means 'making a series of calls, one right after the other.'" *Hicks v. America's Recovery Solutions, LLC,* 816 F.Supp.2d 509, 515 (N.D.Ohio 2011) (citing *McVey v. Bay Area Credit Service,* No. 4:10–CV–359–A, 2010 U.S. Dist. LEXIS 130923, 2010 WL 2927388, at *6 (N.D.Tex. July 26, 2010) (citing Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097)).

█ The Sixth Circuit Court of Appeals has determined that, "although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, .... Congress has indicated its desire for the courts to structure the confines of § 1692d.'" *Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 330 (6th Cir.2006) (citing *Jeter v. Credit Bureau,* 760 F.2d 1168, 1179 (11th Cir.1985)). Courts generally agree that "[t]here is no bright line rule regarding the number of calls which creates the inference of intent." *Hicks,* 816 F.Supp.2d at 515. Rather, courts consider whether "the nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass without any other evidence of the debt collector's motive in calling." *Brown v. Hosto & Buchan, PLLC,* 748 F.Supp.2d 847, 852 (W.D.Tenn.2010).

█ The Plaintiff argues that the 32 telephone calls placed by the Defendant in an attempt to collect the debt he owed to Nuvell provide grounds to infer that the Defendant's intent was to annoy, abuse, or harass, specifying that:

> Defendant contacted Plaintiff from (866) 932–6714 more than thirty (30) times between August 19, 2010 and November 3, 2010. On August 19, 2010, Defendant placed back to back calls to Plaintiff only two minutes apart. On August 26, 2010, Defendant again placed back to back calls—this time, only one minute apart. On August 29, 2010, Defendant called three times in less than an hour and forty-five minutes. On October 11, 2010, Defendant called three times in only two minutes.

(Doc. No. 44 at 1) (internal citations omitted). The Plaintiff further argues that the Defendant violated the anti-harassment provisions because on one occasion he told the Defendant's representative to stop calling and that he could not pay the debt.

The Court, however, disagrees with the Plaintiff's assessment of the evidence upon which he relies. First, as the Defendant correctly points out, there were no back-to-back calls made to the Plaintiff on August 19, 26, and 29 nor on October 11. During his deposition, Plaintiff testified that he had two telephone numbers in his name, one ending in 4498 and the other ending in 4311. Pl. Depo. 61:9–64:10; Feazell Aff. ¶ 6, Ex. D (Doc. No. 29–5). Plaintiff further testified that calls made to the telephone number ending in 4311 were automatically forwarded to the telephone number ending in 4498. *Id.* at 149:1–150:17. Because of this fact, the Defendant's attempted telephone calls to 4311 are included in Exhibit A–1 as calls to 4498 because they were forwarded to that number. There is no dispute, however, that the Defendant's records show that on August 19, 2010, the Defendant attempted one telephone call on or about 11:25 a.m. to telephone number 4498 and another to telephone number 4311 on or about 11:27

a.m. *See* 3rd Novak Aff. ¶ 2; *see also* Pl. Memo, Ex B. On August 26, 2010, the Defendant attempted one telephone call at or about 8:23 a.m. to telephone number 4498 and another to telephone number 4311 on or about 8:24 a.m. *Id.* at ¶ 3. On August 29, 2010, the Defendant attempted one telephone call at or about 12:46 p.m. to telephone number 4498, another to telephone number 4311 at or about 12:47 p.m. *Id.* at ¶ 4. On October 11, 2010, the Defendant only attempted one telephone call at or about 12:48 p.m. to telephone number 4498. *Id.* at ¶ 5. The only attempted calls that the Defendant made October 11, 2010 on Plaintiff's account were to telephone numbers xxx–xxx–2846 and xxx–xxx–1498, which do not belong to Plaintiff. *Id.* Thus, the evidence reflects that the Plaintiff's contention that there were back-to-back calls is inaccurate. The Defendant's records and the Plaintiff's testimony are consistent and show that the calls that appear to be back-to-back were actually made to two different telephone numbers that both belong to the Plaintiff.

Second, the Plaintiff throughout his memorandum in opposition indicates that he asked the Defendant to stop calling him. The transcription[1] upon which the Plaintiff relies however, only indicates that the Plaintiff asked the Defendant to stop calling his roommate. Nowhere in the telephone conversation does the Plaintiff ask the Defendant to stop calling him.

When viewing that evidence before it in the light most favorable to the Plaintiff, the Court finds that within a period of 73 days the Defendant made a total of 30 calls to the Plaintiff's telephone numbers and two telephone calls to the Plaintiff's roommate, one of those calls after it was informed that the number did not belong to

the Plaintiff and it was asked not to call the number. Further, the evidence shows that the Plaintiff informed the Defendant on one occasion that he could not pay the debt. Plaintiff otherwise did not answer the telephone calls from the Defendant because he recognized the Defendant's telephone number. Plaintiff argues that harassment can be inferred from this pattern of collection attempts. This Court disagrees.

Generally, courts have found violations of the FDCPA where there were significantly more or more frequent telephone calls than those at issue here. *See e.g., See Tucker v. The CBE Group, Inc.,* 710 F.Supp.2d 1301, 1303 (M.D.Fla.2010) (57 calls to non-debtor, including 7 on one day, only 6 messages left in total was not a violation); *Jones v. Rash Curtis & Assocs.,* No. 10–cv–0225, 2011 WL 2050195 (N.D.Cal. Jan. 3, 2011) (179 calls over a year is not a violation); *Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218, 1229 (E.D.Cal.2010) (allegations of "daily" or "nearly daily" phone calls alone do not raise an issue of fact as to these claims); *Jiminez v. Accounts Receivable Mgmt., Inc.,* No. CV 09–9070–GW(AJWx), 2010 WL 5829206 (C.D.Cal. Nov. 15, 2010) (69 calls over 115 days, no live contact, one voice mail left, no more than 2 calls/day, except for a single day in which there were 3 calls is not a violation); *Waite v. Fin. Recovery Serv., Inc.,* No. 8:09–cv–02336–T–33AEP, 2010 WL 5209350 (M.D.Fla. Dec. 16, 2010) (132 calls over 7 months was not a violation of the FDCPA); *Katz v. Capital One,* No. 1:09cv1059, 2010 WL 1039850 (E.D.Va. March 18, 2010) (15–17 calls after creditor notified of attorney representation, not more than 2 calls/day, no inconvenient times, no requests to stop, no

---

**1.** This transcription was made by the Plaintiff's counsel from audio recordings that were exchanged during discovery. The transcrip- tions were attached to the amended complaint and the Defendant does not dispute that they are accurate.

calls after consumer hangs up held not a violation); *Saltzman v. I.C. Sys., Inc.,* No. 09–10096, 2009 WL 3190359 at *6–7 (E.D.Mich. Sept. 30, 2009) (20–50 unsuccessful calls, 2–10 successful calls in one month not a violation);

Further, as our sister district court recently pointed out in its analysis on this issue, "the nature, extent, and context of the calls are also important." *Hicks v. America's Recovery Solutions, LLC,* 816 F.Supp.2d 509, 515 (N.D.Ohio Sept. 29, 2011). In that case, the court found that a reasonable jury could infer the requisite intent to harass or annoy when only 21 calls were made over a three-month period because the calls continued "on a daily basis, often twice a day, despite being advised that Plaintiffs were represented by a debt management company." *Id.* at 515.

In other examples, courts have found that the nature, extent, context, and pattern of calls weighed on the decision as to whether the calls were harassing. In *Meadows v. Franklin Collection Service, Inc.,* the Eleventh Circuit reversed the district court's grant of summary judgment in favor of the collection agency, where the agency had made 300 calls over two years after the plaintiff informed it that the she did not have any debt with them and that the debtors did not live with her. 414 Fed.Appx. 230 (11th Cir.2011). In *Gilroy v. Ameriquest Mortg. Co.,* the district court found that the inconvenient times the calls were made was a factor that weighed in favor of an inference of harassment, abuse, or oppression. 632 F.Supp.2d 132, 136–37 (D.N.H.2009) ("[The plaintiff] also testified that the defendants repeatedly called her at home around 8 p.m. and sometimes as late as 9 p.m., after she had informed them that she often went to bed by 8 or 9 p.m. and that the evening calls were bothering her."). Another district court found that a defendant who

made six calls to a consumer's place of business in twenty-four minutes and two additional calls within five minutes of when the debtor hung up violated the FDCPA. *Kuhn v. Account Control Tech.,* 865 F.Supp. 1443, 1453 (D.Nev.1994).

In addition, in *Martin v. Select Portfolio Serving Holding Corp.,* this Court noted that harassment may be inferred based on the intimidating posture taken by the debt collector's employee during the debt collection conversations. 2008 WL 618788, at *6 (S.D.Ohio March 3, 2008) (citing *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994) (for the proposition that a debt collector may violate § 1692d(5) when its employee adopts an intimidating posture in telephone conversations)); *see also Saltzman,* 2009 WL 3190359, at *7 ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor if this effort is unaccompanied by any oppressive conduct."). Finally, some courts have inferred harassment when the debt collector does not stop calling even after being told repeatedly by the debtor to cease. *See e.g. Chiverton v. Fed. Fin. Group, Inc.,* 399 F.Supp.2d 96 (D.Conn. 2005); *but see Saltzman,* 2009 WL 3190359, at *7 ("Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse.").

In the instant action, not only were the calls not made continuously or repeatedly, there are also no circumstances indicating the nature or context of the calls were harassing. Indeed, the transcript of the telephone calls attached to the Plaintiff's complaint shows that the Defendant's rep-

resentative, identified only as Wayne, was very respectful and polite to the Plaintiff even though the Plaintiff was clearly upset with the representative. There is no evidence that the calls were made at an inconvenient time or place, that they were made after the Plaintiff repeatedly requested that they stop, or that they were made after the Plaintiff informed the Defendant that he was represented by counsel or a debt management company. While it is clear that the telephone calls made to the Plaintiff were unwelcome, that is simply insufficient to establish a violation of the FDCPA. As this Court has stated previously, "[a]ny call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation of the FDCPA." *Martin*, 2008 WL 618788, at *6.

Accordingly, the Court concludes that even when viewing the evidence in the light most favorable to the Plaintiff and making all justifiable inferences in his favor, no reasonable jury could return a verdict in his favor on his claim of harassment under the FDCPA, 15 U.S.C. § 1692d.

## B. Disclosure Provision of the FDCPA

Section 1692e(11) provides that a debt collector should disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information shall be used for that purpose, and should disclose in subsequent communications that the communication is from a debt collector. 15 U.S.C. 1692e(11). Here, the Plaintiff attaches transcripts of the following four voicemail messages that were left by an employee of the Defendant:

This message is for Mike Durthaler. If you are not Mike Durthaler please hang up and disregard this message now. By continuing to listen to this message you acknowledge that you are Mike Durthaler. Mike just do not play this message if other people can hear it as it contains personal information. There will be a three second pass to allow you to play this message in private. My name is Linda Stefan from accounts receivable management, we are a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact me about an important business matter at 866–932–6714.

This message is for Mike Durthaler. If you are not Mike Durthaler please hang up and disregard this message now. By continuing to listen to this message you acknowledge that you are Mike Durthaler. Mike just do not play this message if other people can hear it as it contains personal information. There will be a three second pass to allow you to play this message in private. My name is Linda Stefan from accounts receivable management, we are a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact me about an important business matter at 866–932–6714.

This message is for Michael Durthaler. Please return this call to Linda Stefan at ARM. I could be reached here at 866–932–6714.

This message is for Michael Durthaler. If you are not Michael Durthaler please hang up and disregard this message now. By continuing to listen to this message you acknowledge that you are Michael Durthaler. This message is for Michael Durthaler. Please return this call to Linda Stefan at ARM. I could be reached here at 866–932–6714.

Am. Compl. Ex. A.

As is apparent, two of these messages do not indicate that the communication is

from a debt collector attempting to collect a debt, which the Plaintiff claims violates § 1692e(11) of the FDCPA. The Defendant moves for summary judgment on that claim, arguing that the Plaintiff lacks standing to bring it, that a voicemail is not a communication subject to the FDCPA, that even if the Plaintiff possesses standing and the voicemails at issue are subject to the FDCPA, the Defendant is entitled to the bona fide error defense. The Plaintiff too moves for summary judgment on this claim, arguing, *inter alia,* that the Defendant waived the bona fide error defense and that, even if it had not, the defense is unavailable to it. The Court, however, disagrees and finds that the Defendant is entitled to the benefit bona fide error defense. The Court therefore need not reach the Defendant's other arguments.

### 1. Waiver

■ The Plaintiff submits that the Defendant does not enjoy the benefit of the bona fide error defense because it expressly waived it in an email to the Plaintiff. The Plaintiff relies upon a July 18, 2011 email from the Defendant's counsel in which counsel specifically waived the bona fide error defense. As the Defendant explains, however, that e-mail communication was drafted and sent several months prior to the Plaintiff's filing of his amended complaint, which added the claim for a violations of § 1692e(11) and prior to the Plaintiff's counsel informing the Defendant that he intended to add such a claim.

Indeed, the e-mail communication relating to the waiver of the bona fide error defense occurred at a time when the only claim that the Plaintiff had pleaded was violation of the anti-harassment provision of the FDCPA, 15 U.S.C. § 1692d and § 1692d(5). Plaintiff had not alleged nor threatened to allege a violation of § 1692e(11) at that time. As Plaintiff's § 1692d claim related solely to the number and frequency of telephone calls, the Defendant agreed to waive its bona fide error defense with respect to that claim. The Defendant, however, did not waive the bona fide error defense with respect to the Plaintiff's claim that it failed to disclose it was a debt collector in two voicemail messages.

### 2. Bona Fide Error Defense

■■ The FDCPA provides a bona fide error defense that shields a debt collector from liability for violating the FDCPA in certain instances. The bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k. The bona fide error defense applies to mistakes of law as well as to clerical errors. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 538 F.3d 469, 476 (6th Cir.2008). "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Id.* at 476–77.

As to the first prong, the Sixth Circuit has held that the bona fide error defense requires only negation of specific intent. *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir.2006). That is, the defendant must show that it did not intend to violate the FDCPA, not that it did not intend to make the communication. As to that issue, the

Court looks to the subjective intent of the debt collector. In evaluating this element, the Tenth Circuit Court of Appeals has explained that "subjective intent can often only be shown by inferential evidence." *Id.* (noting "that even under criminal law specific intent analysis, 'a jury is permitted to draw inferences of subjective intent from a defendant's objective acts.' *Wingfield v. Massie,* 122 F.3d 1329, 1333 (10th Cir.1997)."). As to the second element of the defense, this Court has explained that a bona fide error is one that is made in good faith; inadvertently; without fraud or deceit. *Edwards v. McCormick,* 136 F.Supp.2d 795, 800 (S.D.Ohio 2001) (citing Black's Law Dictionary 168 (7th ed. 1999)). The third element, the procedures prong, by the express language of the statute, must be "reasonably adapted to avoid" the error that occurred. 15 U.S.C. § 1692k(c).

■ Turning the Court's attention first to the procedures component of the bona fide error defense. That element involves a two-step inquiry. The first step is to determine "whether the debt collector 'maintained'—*i.e.,* actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle,* 443 F.3d at 729 (citing 15 U.S.C. § 1692k(c); *Jenkins v. Heintz,* 124 F.3d 824, 834, 835 (7th Cir.1997) (finding debt collector conclusively established procedures prong where the debt collector actually employed both general procedures to comply with the FDCPA and specific procedures designed to avoid the error at issue); *Frye v. Bowman,* 193 F.Supp.2d 1070, 1088–89 (S.D.Ind.2002) (finding procedure prong satisfied based on debt collector's unrebutted evidence that it maintained both general and specific procedures); *Taylor v. Luper, Sheriff, & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761, 766–67 (S.D.Ohio 1999)

("Defendants have established the elements of the bona fide error defense to the FDCPA and plaintiffs have failed to raise any genuine issue of material fact regarding any of the elements of that defense.")).

In the case *sub judice,* the Defendant presents evidence that its policy at the time of these calls was for all collectors to set forth in all voice mail messages that ARM was a debt collection company and that the call was an attempt to collect a debt and that any information obtained would be used for that purpose. Every collector, including Ms. Stefan, was instructed to set forth in every communication with a consumer that ARM is a debt collection company and the communication is an attempt to collect a debt and that any information obtained would be used for that purpose. In fact, a three by five card was and is attached to every collector's desk that reiterates this language. Such a reference card was attached to Ms. Stefan's desk when she left the messages at issue.

Additionally, all of the Defendant's collectors, including Ms. Stefan, are provided with two weeks of initial training regarding the FDCPA, the requirements of 15 U.S.C. § 1692e(11), and the Defendant's policy that in every communication, including voicemails, the collector must state "this is an attempt to collect a debt and any information will be used for that purpose." Novak Aff. ¶ 20. All collectors are given a copy of ARM's manual relating to FDCPA compliance (which includes compliance with 15 U.S.C. § 1692e(11)) at initial training and encouraged to keep it at their desks. All collectors, including Ms. Stefan, were and are required to go through one week of on-the-floor training as well and again instructed as to the required content of messages left on voicemails to consumers. If collectors do not pass these training sessions or do not pass

their proficiency exams relating to the FDCPA, they are not hired. Moreover, the Defendant has mandatory quarterly continuing training sessions for collectors that provide updates as to the requirements of the FDCPA, which again reiterate the mandatory disclosure of the language contained in 15 U.S.C. § 1692e(11). Ms. Stefan achieved satisfactory scores on these tests.

The Defendant's policy is to monitor its collectors telephone calls to consumers and routinely record them to ensure that they are complying with the FDCPA and setting forth the language required by 15 U.S.C. § 1692e(11). In the event that collector continuously fails to set forth "this is an attempt to collect a debt and any information will be used for that purpose," it is grounds for immediate discipline. Ms. Stefan went through and passed initial training and on-the-floor training demonstrating that she was proficient with ARM's compliance procedures related to the FDCPA. Also, she was provided with a copy of the FDCPA and has attended mandatory continuing training sessions related to the FDCPA and the requirements of 15 U.S.C. § 1692e(11). Ms. Stefan was never disciplined for a violation of the FDCPA for any violation of the FDCPA or any other consumer protection law or statute during her employment.

The Defendant's unrebutted evidence conclusively establishes that the Defendant actually employed both general procedures to comply with the FDCPA and specific procedures designed to avoid the error at issue.

Moving to the remaining prongs of the bona fide error defense, the evidence permits a ready inference that Ms. Stefan's subjective intent was not to violate the FDCPA. It is not disputed that Ms. Stefan left two messages that were in total compliance with the FDCPA. Those ob-jective acts easily inform Ms. Stefan's subjective intent. These acts also cast light upon Ms. Stefan's good faith and lack of deceit and fraud. There is no evidence before the Court from which a jury could find that the Defendant's error was anything other than bona fide or that any resulting violation of the FDCPA was intentional.

This case is on all fours with *Beattie v. D.M. Collections, Inc.,* in which the plaintiff filed suit claiming that the defendants violated the 15 U.S.C. § 1692e(11) as they did not disclose to the plaintiff in three separate telephone calls that they were attempting to collect a debt and that any information would be used for that purpose. 754 F.Supp. 383 (D.Del.1991). In response, the defendants asserted a bona fide error defense and the court agreed that any alleged violation of 15 U.S.C. § 1692e(11) by defendants was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Id.* at 388–90.

In supporting this determination, the Court specifically referenced the fact that the employees of defendants periodically attended training seminars to aid them in complying with the FDCPA, they were provided with a FDCPA manual and a statement of collection policy for the FDCPA, five by eight cards were posted over every telephone setting forth that "this is an attempt to collect a debt and any information obtained will be used for that purpose," it was defendants' standard procedure for employees to recite the language on the card when conducting collection business by telephone, and that the language on the card was cited in conversations with plaintiff and thus, any failure was unintentional. *Id.* at 389.

The Court concludes that the Defendant has established all of the elements of the

bona fide error defense and the Plaintiff has failed to raise a genuine issue of material fact regarding any element of that defense. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's claim of failure to disclose that the Defendant was a debt collector in violation of the FDCPA, 15 U.S.C. § 1692e(11).

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendant's motion for summary judgment (Doc. No. 27) and **DENIES** the Plaintiff's motion for partial summary judgment (Doc. No. 39). The Clerk is **DIRECTED TO ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**