**Ruby JOSEPH, Plaintiff,**

v.

**J.J. MAC INTYRE COMPANIES, L.L.C., Defendant.**

**No. C–02–2771 EMC.**

United States District Court, N.D. California.

Dec. 12, 2002.

Bryan Kemnitzer, Kevin Mallon of Kemnitzer, Anderson, Barron & Oligvie, LLP, San Francisco, CA, for Plaintiff.

Law Offices of Clark Garen, Corona, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT (Docket No. 2 and No. 3)**

CHEN, United States Magistrate Judge.

Plaintiff, a San Francisco resident, brought suit alleging five causes of action against the Defendant, a debt collection agency located in Riverside County, California, in connection with Defendant's efforts to collect on debts owed by Plaintiff for patient care at San Francisco General Hospital. Plaintiff alleges: (1) violation of the Rosenthal Fair Debt Collection Prac-

tices Act (California Civil Code § 1788 *et seq.*); (2) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (3) an invasion of privacy; (4) tort-in-se; and (5) violation of Cal. Business and Professions Code § 17200 *et seq.* First Amended Complaint (hereinafter "FAC"). Plaintiff Ruby Joseph (hereinafter referred to as "Joseph" or "Plaintiff") sought injunctive relief, restitution and damages. *Id.*

The suit was initiated in the San Francisco Superior Court on May 2, 2002. On June 10, 2002, defendant J.J. Mac Intyre Companies, L.L.C. (hereinafter referred to as "Defendant") removed this matter to federal court pursuant to 28 U.S.C. §§ 1357 and 1367. Both parties consented to proceed before the Court pursuant to 28 U.S.C. § 636(c)(1). On June 10, 2002, Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment. On September 17, 2002, this Court ordered Defendant to show cause why this case should not be remanded to state court because it did not appear there was federal jurisdiction since the original complaint did not assert a federal claim. On October 11, 2002, the parties stipulated to permitting Plaintiff leave to file a First Amended Complaint which added allegations that Defendant violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. On October 28, 2002, this Court ordered additional briefing on whether on the face of the allegations in the first amended complaint, this Court retains jurisdiction in light of the FDCPA's one-year statute of limitations. § 1692k(d). The parties agreed the statute does not bar the FDCPA claim.

Satisfied that the Court has jurisdiction over this case, a hearing on the merits of Defendant's motions to dismiss and/or summary judgment was held on November 20, 2002. Based on the Court's review of the record in this case, as well as the moving papers, accompanying declarations and oral argument heard before the Court on November 20, 2002, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## *STATEMENT OF FACTS*

Sometime prior to March 1999, plaintiff Ruby Joseph, physically disabled, sought and received medical services from San Francisco General Hospital, owned and operated by the City and County of San Francisco. Joseph is not indigent. Joseph incurred debt at San Francisco General Hospital in the amount of $2,356.62. Joseph's debt was assigned to a debt collection agency, CODAR, Inc., d/b/a J.J. Mac Intyre Company. Defendant's Motion to Dismiss, at 2.

In March 1999, Defendant began sending collection letters to Joseph in an attempt to collect interest on and the principal debt owed by her. In addition to collection letters, Defendant also used an automated dialing system with a pre-recorded voice to call Joseph. Joseph alleges that through this system, Defendant called Joseph at odd hours and as often as three times a day over a year and a half period, even though Joseph had begun making $50 monthly payments towards her debt. FAC ¶¶ 8–17.

## *ANALYSIS*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir. 1991); *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995). The issue is not

whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997).

■ Federal Rule of Civil Procedure 12(b)(6) provides that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.Civ.P. 12(b)(6); *see also Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir.2001). Since Defendant presented outside materials such as telephone records in connection with some of Plaintiff's claims, the Court will treat those aspects of Defendant's motion as one for summary judgment. Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted upon showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Where the Court considers matters outside the pleadings, the Court must view said evidence in a light most favorable to the non-moving party. *See Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1253 (9th Cir.1982) ("Summary judgment is proper if the pleadings and evidence submitted in support of the motion show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). The moving party possesses the initial burden of showing the absence of a genuine issue of fact. *See Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir.1980). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Aydin Corp. v. Loral. Corp.*, 718 F.2d 897, 902 (9th Cir.1983) (stating that a genuine issue is found where "a judge or jury [must] resolve the parties' differing versions of the truth at trial"). Justifiable inferences are to be drawn in the non-moving party's favor. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. 2505.

The Court addresses each of plaintiff Joseph's claims.

## I. *Collection of Interest*

Plaintiff alleges that Defendant impermissibly attempted to collect interest on her county hospital debt, in violation of California Civil Code § 1788.13(e)[1] and § 1692f(1)[2] of the FDCPA. FAC ¶¶ 22, 34. Plaintiff argues that as a county hospital, San Francisco General may not collect interest on debts under California Welfare and Institutions Code § 17401. FAC ¶ 21. Defendant counters that § 17401 is inapplicable to Plaintiff because it pertains only to the collection of liens by a county for hospital services provided to indigent patients. Defendant's Motion to Dismiss, at 2, 5. The issue appears to be one of first impression.

---

**1.** Civil Code § 1788.13(e), part of the Rosenthal Fair Debt Collection Practices Act (hereinafter "Rosenthal Act") prohibits debt collection by means of "The false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation."

**2.** Section 1692f(1) specifies that the following is a violation: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Section 17401 is titled "Liens; suspension of enforcement; release; subordination; exempt property" and states:

No lien taken by a county pursuant to Section 17109 for care provided to a person in a county hospital shall be enforced against the home of that person (1) during his lifetime or that of his spouse, or (2) during the minority of his children if they reside in the home, or (3) during the lifetime of any dependent adult child who resides in the home and who is incapable of selfsupport because of mental or physical disability.

Any lien taken by a county for county hospital care shall be released immediately when the amount owing the county for that care is paid. The county shall render to a person to whom care has been provided in a county hospital a statement setting forth the charges upon which its claim for reimbursement is based. *No interest or carrying charge shall be charged in connection with any debt incurred for county hospital care.* If a person against whose home a lien has been imposed for county hospital care desires to sell his home, the county shall release its lien against the original home and transfer it to the new home, provided that it finds that its security will not be impaired. If the person desires to borrow money for the purpose of making improvements to his home, using his home for security, the county shall subordinate its lien to the mortgage or other security interest given for the loan, if the county finds that its security will not be impaired.

If a person against whose home a lien has been imposed for county hospital care has the home acquired by a public entity for public use, the county shall release its lien against the original home and transfer it to any new home the person acquires.

No lien shall be taken pursuant to Section 17109 against the home of a person for care provided him in a county hospital, if he was confined to the county hospital as the result of a diagnosis of tuberculosis.

No lien shall be taken pursuant to this part against the home or other property of any relative, except for a parent of a minor or a spouse, liable for the support of a person confined in a county hospital or otherwise receiving aid under this part.

In no way do the authorizations and limitations expressed in this section enlarge upon the power of counties to take or impose liens under existing law. Nothing contained in this section shall be construed to permit a county to impose a lien for aid or other assistance granted under any public assistance program established by this code for which federal funds are received by this state, or under the aid to the potentially self-supporting blind program.

Section 17401 (emphasis added). Plaintiff argues that the plain meaning of one sentence—"No interest or carrying charge shall be charged in connection with any debt incurred for county hospital care"— applies here and is dispositve.

■ When the language of a statute is unambiguous, its plain meaning generally governs. *Lennane v. Franchise Tax Bd.,* 9 Cal.4th 263, 268, 36 Cal.Rptr.2d 563, 885 P.2d 976 (1994). In some situations, however, what would otherwise appear to be plain language is interpreted contrarily where there are compelling indications of legislative intent. *County of Los Angeles v. Frisbie,* 19 Cal.2d 634, 639, 122 P.2d 526 (1942) ("While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language."). Moreover, where particular

language of a statute appears ambiguous, it is appropriate to look to other indicia of the Legislature's intent, including the textual context of the language, policy, and legislative history. As the court noted in *California Mfrs. Assn. v. Public Utilities Com.*, 24 Cal.3d 836, 157 Cal.Rptr. 676, 598 P.2d 836 (1979), "Where a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible. Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided. In the present instance both the legislative history of the statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining the statutory purpose." *Id.* at 844, 157 Cal.Rptr. 676, 598 P.2d 836 (citations omitted). For the reasons stated below, the Court finds key sentence of § 17401 to be sufficiently ambiguous to warrant looking to its larger context and extrinsic sources to interpret the subject sentence.

 The statutory context of the sentence relied upon by Plaintiff is revealing. The statutory scheme of which § 17401 is a part—Division 9, Part 5 of the Welfare and Institutions Code—is entitled "County Aid and Relief to Indigents." It governs the administration of general assistance provided by cities and counties to poor, indigent residents. Section 17000 defines "residents" as "incompetent, poor, indigent persons." Chapter 2 of the Division, §§ 17100–17111, governs eligibility for county aid. Chapter 3, §§ 17200–17201, covers work relief projects in which indigent recipients are required to participate. Chapter 4, §§ 17300–17301, governs relatives' responsibilities for aid rendered under this part. Chapter 5, of which § 17401 is a part, covers termination and recovery of assistance. It is apparent, therefore, that § 17401 is part of a law that addressed the provision of general assistance benefits and aid to indigent residents.

The first Section under Chapter 5, § 17400, addresses the situation in which a "county has taken a lien against real property owned by a recipient of public assistance for any purpose, including hospitalization." Section 17401 governs the handling of liens. Section 17401 contains seven paragraphs, each of which imposes some limits on the enforcement of liens. Significantly, the first paragraph refers to liens taken by a county pursuant to § 17109 for care provided to a person in a county hospital. Section 17109, part of the chapter covering eligibility for public assistance, authorizes the county to place a lien on property as a condition to the grant or condition of "aid to an indigent." Section 17109.[3] Thus, placed in context of the plain text of the statute, § 17401 and the ban on collection of interest contained

---

**3.** Section 17109 states:

As a condition to the grant or continuation of aid to an indigent, the board of supervisors may require, as security for the moneys so expended, that the applicant transfer or grant to it such property or interest in property as the applicant has, or such portion thereof or estate therein or lien thereon as the board specifies. Such property shall be managed by the board of supervisors and the net income thereof shall be applied to the reimbursement of the county for the aid granted, and any surplus in excess of such reimbursement shall be paid to the indigent. In the case of any estate, interest, or lien in such property held by the board, or any right of management transferred thereto, the board shall have all the powers of an attorney in fact for the indigent as to such estate, interest, or lien, and may sell, lease, or transfer the same, defend and prosecute all suits concerning it, pay all just claims against it and be reimbursed out of the proceeds, and do all things necessary for the protection, preservation, and management thereof. Any such estate, interest, or

therein pertains to the provision of public aid to indigent residents.

Given the context of § 17401 within related provisions of the Welfare and Institutions Code dealing with aid to indigent residents, this Court finds it highly implausible that the California Legislature intended to ban the collection of interest on *all* debts incurred for county hospital care, including those debts incurred by those who have financial means. It seems unlikely that such an important provision affecting *all* county hospital care and payment therefor would be buried deep within a statutory scheme addressing "county aid and relief to indigents."

Moreover, it is difficult to fathom any rational public policy purpose for such a sweeping interpretation of § 17401. County hospitals provide services to the general public, such as emergency services for trauma victims and other specialized medical services and facilities. They serve not only indigent residents, but those with health insurance and financial means. Plaintiff has not suggested any rational reason why interest on debt incurred by even wealthy patients should be barred.[4] *See People v. Rubalcava,* 23 Cal.4th 322, 328, 96 Cal.Rptr.2d 735, 1 P.3d 52 (2000) ("In the end '[w]e must select the construction that comports most closely with

the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' ") (citing *People v. Jenkins,* 10 Cal.4th 234, 246, 40 Cal. Rptr.2d 903, 893 P.2d 1224 (1995)).

 What little legislative history has been presented to the Court is consistent with the Court's interpretation of § 17401. The Legislative Counsel's analysis of A.B. 175, which later became § 17401, states that the bill, "Requires that lien for county hospital care be released immediately when amount owing county is paid, and requires county to render patient statement setting forth charges upon which its claim for reimbursement is based. Prohibits interest or carrying charges on any *such* debt." Cal. Leg. Counsel Analysis of A.B. 175 (emphasis added). While the Legislative Counsel's analysis of a bill does not have the force of law, *People v. Cruz,* 13 Cal.4th 764, 780, 55 Cal.Rptr.2d 117, 919 P.2d 731 (1996) (courts are not bound by incorrect information provided by the California Legislative Counsel), it is consistent with and lends support to this Court's reading of § 17401 that the ban on interest does not apply to *all* county hospital debts but only "such" debts described in the rest of § 17401.[5]

---

lien shall be held by the board, subject to the claim of the county for reimbursement for aid granted to the applicant or for moneys expended in its management, preservation, or protection, and such reimbursement shall constitute a preferred claim against such estate, interest, or lien.

4. Plaintiff asserts that interpreting the ban on interest so as not to apply to all county hospital patients but only in connection with liens would create the perverse result that only those with property to lien would discriminate against the poorest of the poor—only those without property would be liable for interest. However, were the ban on interest interpreted to apply to all debts incurred by indigents and not just those in connection

with liens, there would be no such paradox. Such an interpretation is at least plausible. The Court need not reach this decision, however, since it concludes that § 17401 does not apply to Plaintiff, who is not indigent. It makes no difference to the instant case whether § 17401 is limited to liens of indigent patients or applies to all indigent patients.

5. The relevant portion of the Legislative Counsel is quoted in an unpublished decision of the Kern County Superior Court Appellate Department provided by Defendant. Although the Court will not take judicial notice of the decision in light of Cal. Rule of Court 977(a), *see Elwood v. Aid Insurance Co.,* 880 F.2d 204, 208 n. 4 (9th Cir.1989) (noting that

This Court is aware of two published opinions discussing § 17401. Plaintiff cites *Lara v. Board of Supervisors of Kern County*, 59 Cal.App.3d 399, 130 Cal.Rptr. 668 (1976) in support of her argument that § 17401 prohibits the collection of interest on all county hospital debts. Plaintiff's Opposition to Motion to Dismiss, at 3. In *Lara*, indigent county hospital patients and their relatives challenged the Kern County General Hospital's practices of assigning debts to a collection agency. *Id.* at 403, 130 Cal.Rptr. 668. *Lara* affirmed the lower court's dismissal for failure to state a claim, ruling that the County was not required by Health & Safety Code § 1473 or Welfare & Institutions Code § 17300 to designate a county officer to collect debts for hospital services. *Id.* at 405–411, 130 Cal.Rptr. 668. *Lara* contains dicta describing § 17401: "17400–410 deal with termination and recovery of county assistance by the county.... Section 17401 provides limitations on the enforcement of liens so as to protect the recipient's home. It further prohibits charging interest in connection with any debt incurred for county hospital care, and allows the county to subordinate its lien in proper circumstances to allow a homeowner to improve on his property." *Id.* at 405 n. 2, 130 Cal.Rptr. 668.

*Lara* is not inconsistent with this Court's holding. The court in *Lara* places § 17401 within the larger statutory scheme governing termination of county assistance—Chapter 5 of Part 5 of Division 9 discussed above. *Id.* at 405, 405 n. 2, 130 Cal.Rptr. 668. Moreover, the plaintiffs in *Lara*—unlike the Plaintiff in this case—were comprised of indigent hospital patients and their relatives. *Id.* at 404, 130 Cal.Rptr. 668. Hence, the court did not have occasion to address whether § 17401 extended beyond debts owed by indigents. Finally, the court assumed that the Part it was interpreting, Section 17300, pertained to "reimbursement of hospital services as well as other 'aid' rendered to *indigents* by the county." 59 Cal.App.3d at 410, 130 Cal.Rptr. 668 (emphasis added).

The other published case, *Ogdon v. Workmen's Comp. Appeals Bd.*, 11 Cal.3d 192, 113 Cal.Rptr. 206, 520 P.2d 1022 (1974) while not directly on point, also supports this Court's analysis. In *Ogdon*, the Court held that the county did not have a right to place a lien on a worker's compensation settlement in order to recover Aid to Families with Dependent Children ("AFDC") payments the county issued to a disabled worker during the pendency of his compensation claim. The Court held the lien authorized by § 17401 pertained to general assistance—"county relief to indigents"—and not public assistance programs for which federal funds are received, such as AFDC. *Id.* at 203–4, 113 Cal.Rptr. 206, 520 P.2d 1022. *Ogdon* does not address the issue here—the collection of interest against non-indigent patients—but it too described § 17401 as part of a larger statutory scheme covering county general assistance programs (*i.e.*, county relief to indigents). *Id.* at 203, 113 Cal.Rptr. 206, 520 P.2d 1022.

For the aforementioned reasons, the Court finds § 17401 does not bar the collection of interest on the debt owed by Plaintiff and therefore dismisses Plaintiff's claims that Defendant violated § 1788.13(e) of the Rosenthal Act and

a party's reliance on de-published California Court of Appeal case "must be rejected" in light of Rule 977(a)), the Court does take judicial notice of the Legislative Counsel's analysis of A.B. 175 (which later became § 17401), which Plaintiff concedes is not mis-

quoted. *See Oneida Indian Nation of New York v. State of New York*, 691 F.2d 1070, 1086 (2nd Cir.1982) (judicial notice of legislative history under Fed.R.Evid. 201(b) is proper when there is no dispute as to the authenticity of the materials).

§ 1692f(1) of the FDCPA by impermissibly collecting interest.

## II. *Meaningful Disclosure of Caller's Identity*

 Plaintiff alleges that Defendant violated California Civil Code § 1788.11(d) by communicating with Plaintiff using a false name and violated 15 U.S.C. § 1692d(6) by failing to meaningfully disclose its identity. FAC ¶¶ 23, 33. Defendant argues that Plaintiff cannot make out a claim for violations of either § 1692 or § 1788 based upon Defendant's phone operator's use of aliases. Motion to Dismiss, at 3. Under the Rosenthal Act, no debt collector can attempt to collect a debt by "any communications with the debtor other than in the name either of the debt collector or the person on whose behalf the debt collector is acting." § 1788.13(a). Similarly, the FDCPA prohibits conduct by a debt collector which has the natural consequence of harassing, oppressing or abusing any person in connection with the collection of a debt, including specifically "the placement of telephone calls without meaningful disclosure of the caller's identity." § 1692d(6).

At the hearing herein, both parties agreed that under § 1788.13(a) and § 1692d(6), Defendant's employees, whether they use a "desk name" or not, were required to identify that they were either representing the debt collector (J.J. Mac Intyre/Codar) or the person on whose behalf the debt collector is acting (SF General Hospital). *See Wright v. Credit Bureau of Georgia, Inc.* 548 F.Supp. 591, 597 on reconsideration 555 F.Supp. 1005 (N.D.Ga. 1983) ("[T]he 'meaningful disclosure' required by section 1692d(6) has been made if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name."); *Kleczy v. First Federal Credit Control, Inc.* 21

Ohio App.3d 56, 486 N.E.2d 204, 206 (1984) (same). At this point, the Court must deny Defendant's motion to dismiss Plaintiff's claims under § 1788.11(d) and § 1692d(6) because the complaint alleges that the required identifications were not made. Plaintiff alleges that an employee of Defendant called using the alias "Judy Green" without otherwise disclosing that she represented the debt collector or SF General Hospital. FAC ¶¶ 13, 23, 33. If true, this allegation would violate § 1788.11(d) and § 1692d(6).

If, as represented at the hearing, Defendant presents undisputed proof that, in fact, the requisite disclosures were made on each call, it may bring a motion for summary judgment if Plaintiff does not voluntarily dismiss this claim.

## III. *Phone Calls at Unreasonable Hours*

Defendant proffers phone records and declarations from its long distance carrier, Express Tel, to substantiate that it never called the Plaintiff before 8:00 a.m. or after 9:00 p.m., which are the hours during which 15 U.S.C. § 1692c(a)(1) prohibits debt collection calls. Defendant's Motion to Dismiss Summary Judgment, at 4. In light of the phone records, Plaintiff concedes that it cannot claim that off-hours phone calls were made in violation of § 1692c(a)(1). The Court therefore grants Defendant's motion for summary judgment regarding claims under 15 U.S.C. § 1692c(a)(1) based upon off-hour phone calls. Fed.R.Civ.P. 56(c).

## IV. *Repeated Phone Calls with Intent to Harass or Annoy*

 Plaintiff alleges that Defendant violated Civil Code § 1788.11(d), § 1788.11(e) and 15 U.S.C. § 1692d(5) by repeatedly and continuously calling Plaintiff with the intent to annoy, abuse, and harass Plaintiff. FAC ¶¶ 12, 14, 16, 24–25, 32. The Rosenthal Act prohibits "causing

a telephone to ring repeatedly or continuously to annoy the person called," and "communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Section 1788.11(d)-(e). The FDCPA likewise prohibits "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Section 1692d(5).

■ Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls. In *Bingham v. Collection Bureau, Inc.* 505 F.Supp. 864 (D.N.D.1981), the court held that when a call was terminated and the collection agency called back immediately, that subsequent call alone could constitute harassment under § 1692d(5) regardless of the content of the call. *Id.* at 873. In *Kuhn v. Account Control Technology, Inc.* 865 F.Supp. 1443 (D.Nev.1994), the court found that six phone calls in a span of 24 minutes constituted harassment in violation of § 1692d(5). *Id.* at 1453.

■ Moreover, claims under the FDCPA are evaluated under a least sophisticated consumer standard. *Jeter v. Credit Bureau, Inc.* 760 F.2d 1168, 1179 (11th Cir.1985) ("[W]e hold that claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse."); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 778 (9th Cir.1982) (applying a least sophisticated consumer standard in evaluating deceptive written communication under § 1692g(a)(3)); *Baker v. Citibank,* 13 F.Supp.2d 1037, 1041 (S.D.Cal. 1998) (same). The Plaintiff in this case is a physically disabled senior citizen. FAC ¶ 17; Exhibit 3 (phone record entry for

June 12, 2001). Thus, Plaintiff's circumstances may make her "relatively more susceptible to harassment, oppression, or abuse." *Jeter,* 760 F.2d at 1179. Although there does not appear to be any published decisions on Civil Code § 1788.11(d) and § 1788.11(e), the relevant language in these portions of the Rosenthal Act closely mirrors that of the FDCPA, and thus it will be similarly interpreted.

In view of the applicable legal standard, the Court finds there are triable issues of fact regarding Plaintiff's claims under Civil Code § 1788.11(d), § 1788.11(e) and 15 U.S.C. § 1692d(5). Defendant acknowledges that it made nearly 200 calls to the Plaintiff over a nineteen-month period. Moreover, on some days there were multiple calls made after voice contact in which the Plaintiff requested no further calls be made. For example, Defendant's phone records indicate that on June 13, 2001, at 8:00 a.m., Defendant had a heated conversation with Plaintiff for 6.6 minutes in which the phone operator noted that Plaintiff said "not to all (sic) her anymore" and "no calls." Exhibit 3. The phone records indicate that Defendant nonetheless called and left messages at 9:12 a.m. and 11:22 a.m. that same day. *Id.* On January 10, 2001, Defendant called Plaintiff at 9:53 a.m., they spoke briefly, and Plaintiff hung up. *Id.* Defendant called back and left two messages later that day. *Id.* Plaintiff also terminated a call on April 11, 2001 at 8:02 a.m. and Defendant called back and left a message at 10:42 a.m. *Id.* In light of *Jeter* and *Baker,* there is at least a triable issue of fact on these claims.

Defendant argues that the volume and frequency of calls is partly excused by the fact that Defendant was collecting on seventeen separate debts owed by the Plaintiff. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, at 10–11. Defendant cites no authority for the propo-

sition that because it was collecting on multiple debts from the same patient, the legal standard for harassing and annoying phone calls is somehow changed; nor is such a distinction apparent from the plain language of § 1788.11(d), § 1788.11(e), and 15 U.S.C. § 1692d(5). No evidence was presented that separate calls were made for each debt, nor if such separate calls were made was any explanation given for why the calls could not have been consolidated. The Court doubts that the average consumer, much less a vulnerable consumer, would perceive, for instance, that four calls close in time from the same party in collection of four $500 debts is less annoying than four calls in collection of a consolidated $2000 debt.

Thus, the Court denies Defendant's motion for summary judgment regarding Plaintiff's claims under § 1788.11(d), § 1788.11(e), and 15 U.S.C. § 1692d(5) because there are genuine issues as to a material fact as to those claims. Fed. R.Civ.P. 56(c)

## V. *Invasion of Privacy*

 Defendant argues that the FDCPA creates a safe harbor for debt collectors, and that Plaintiff's claim for invasion of privacy must be dismissed because the telephone records establish that Defendant neither called Plaintiff during off-hours nor was responsible for causing Plaintiff's phone to ring repeatedly. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, at 12–13. For reasons already stated, although the Court grants summary judgment to Defendant on claims under 15 U.S.C. § 1692c(a)(1) based upon off-hour phone calls, it denies summary judgment regarding repeated harassing phone calls under Civil Code § 1788.11(d), § 1788.11(e) and 15 U.S.C. § 1692d(5).

 Under common law, there is a recognized invasion of privacy tort for intrusion upon seclusion. Restatement (2d) of Torts § 652B p. 378 (1977) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). More importantly, intrusion upon seclusion is actionable under California law. *Shulman v. Group W. Productions Inc.* 18 Cal.4th 200, 231, 74 Cal.Rptr.2d 843, 955 P.2d 469 (1998) (quoting the Restatement (2d) of Torts § 652B); *Miller v. Nat'l Broadcasting Co.,* 187 Cal.App.3d 1463, 1482, 232 Cal.Rptr. 668 (1986) (same); *see also* Cal. BAJI 7.20 ("The essential elements of this claim are: 1) the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; 2) The intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and 3) The intrusion caused plaintiff to sustain injury, damage, loss or harm."). Defendant does not specifically respond to Plaintiff's argument that she can maintain a cause of action for intrusion upon seclusion under *Shulman.* Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, at 12–13. Given the number and pattern of calls involved, there is genuine issue of fact as to whether Plaintiff's privacy was invaded.

 Plaintiff's invasion of privacy claim is not preempted by the FDCPA. Under 15 U.S.C. § 1692n, the FDCPA does not preempt state laws unless and only to the extent "those laws are inconsistent with any provisions of this subchapter."[6] Importantly, a state law is not

---

6. Section 1692n states:

This subchapter does not annul, alter, or affect, or exempt any person subject to the

"inconsistent" with the FDCPA "if the protection such law affords any consumer is greater than the protection provided by this subchapter." Accordingly, only state laws which make it impossible to comply with both state and federal law (*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)), such as where state law requires conduct prohibited by federal law, are preempted. The California tort for invasion of privacy does not constitute such a law. Whether it imposes independent state liability under a more or less rigorous standard of liability than federal law, it does not affect liability under the FDCPA and is therefore not inconsistent with the FDCPA.

Accordingly, the Court denies Defendant's motion for summary judgment regarding Plaintiff's invasion of privacy claims.

## VI. *Tort In Se*

 Plaintiff's Fourth Cause of Action is for tort-in-se for the alleged violations of the Rosenthal Act specified in the First Cause of Action. FAC ¶¶ 8–17, 39–42. Defendant moves for dismissal and/or for summary judgment based upon the argument that Defendant has not violated the Rosenthal Act. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, at 13–14. For the reasons stated above, the Court denies Defendant's motion for summary judgment regarding meaningful disclosure of the caller's identity (Civil Code § 1788.13(a)) and harassing phone calls (§ 1788.11(d)-(e)). Given that some Rosenthal Act claims survive summary judgment, Plaintiff, as an allegedly injured

party and an intended beneficiary of the Rosenthal Act, can also state a claim for tort-in-se. *See Laczko v. Jules Meyers, Inc.,* 276 Cal.App.2d 293, 295, 80 Cal.Rptr. 798 (1969) (finding a civil cause of action appropriate for violation of a statutory duty not to alter an odometer reading in a used car even though the statute did not specify a civil remedy). As noted in *South Bay Building Enterprises, Inc. v. Riviera Lend–Lease, Inc.* 72 Cal.App.4th 1111, 85 Cal.Rptr.2d 647 (1999), "Violation of a statutory duty to another may therefore be a tort and violation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the statute itself. Any injured member of the public for whose benefit the statute was enacted may bring the action." *Id.,* at 1123, 85 Cal.Rptr.2d 647 citing *Laczko.* See Restatement (2d) of Torts § 874A (1979) ("When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.").

Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's claim for tort-in-se because there remain triable issues of fact regarding the Rosenthal Act. Fed.R.Civ.P. 56(c).

---

provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For

purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

## VII. *Unfair Business Practices*

■ Plaintiff's Fifth Cause of Action is for violation of Cal. Business and Professions Code § 17200 *et seq.* FAC ¶¶ 43–47. Plaintiff's § 17200 claim is based upon Defendant's alleged impermissible collection of interest and harassing phone calls. FAC ¶¶ 44–45. Defendant moves for dismissal and/or summary judgment, arguing that since Defendant did not violate the Rosenthal Act, it did not engage in any unfair business practices. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, at 14–15.

■ Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." Section 17200 extends to anything that can properly be called a business practice and that at the same time is forbidden by law. *Films of Distinction, Inc. v. Allegro Film Productions, Inc.* 12 F.Supp.2d 1068, 1079 (C.D.Cal.1998). Section 17200 may apply to acts forbidden by federal law as well. *Citizens for a Better Environment—California v. Union Oil of California,* 996 F.Supp. 934, 938 (N.D.Cal. 1997) (rejecting argument that the Clean Air Act cannot serve as the basis for a § 17200 action, ruling: "The fact that most violations of §§ 17200 are based on violations of state law does not preclude the use of a violation of federal law as a grounds for §§ 17200 liability."); *State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal. App.4th 1093, 1102–03, 53 Cal.Rptr.2d 229 (1996) ("Virtually any law—federal, state or local—can serve as a predicate for a § 17200 action.").

■ Since the Court has found that there are questions of fact regarding po-

tential violations of state and federal law, by extension there are also questions of fact regarding the § 17200 claim as well. *See Films of Distinction,* 12 F.Supp.2d at 1079 ("Whether any particular conduct is a business practice within the meaning of section 17200 is a question of fact dependent on the circumstances of each case.") (citation omitted).[7] Consequently, the Court denies Defendant's motion for summary judgment regarding § 17200. Fed. R.Civ.P. 56(c).

### *CONCLUSION*

For the reasons stated above, the Court (1) **GRANTS** Defendant's motion to dismiss Plaintiff's claims that Defendant violated § 1788.13(e) of the Rosenthal Act and § 1692f(1) of the FDCPA by impermissibly collecting interest; (2) **DENIES** Defendant's motion to dismiss Plaintiff's claims under § 1788.11(d) and § 1692d(6) for lack of meaningful disclosure of identity; (3) **GRANTS** Defendant's motion for summary judgment regarding claims under 15 U.S.C. § 1692c(a)(1) based upon off-hour phone calls; (4) **DENIES** Defendant's motion for summary judgment regarding Plaintiff's claims under Civil Code § 1788.11(d), § 1788.11(e) and 15 U.S.C. § 1692d(5) for repeated phone calls with intent to harass or annoy; (5) **DENIES** Defendant's motion for summary judgment regarding Plaintiff's invasion of privacy claims for intrusion upon seclusion; (6) **DENIES** Defendant's motion for summary judgment on Plaintiff's claim for tort-in-se; and (7) **DENIES** Defendant's motion for summary judgment on Plaintiff's claim un-

---

7. Moreover, because § 17200 is phrased in the disjunctive, it prohibits practices that are unfair or deceptive even if they are not unlawful. *Cel–Tech Communications v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("[A]

practice may be deemed unfair even if not specifically proscribed by some other law."); *Wilner v. Sunset Life Insurance Co.,* 78 Cal. App.4th 952, 964–65, 93 Cal.Rptr.2d 413 (2000) (same).

der Cal. Business and Professions Code § 17200 *et seq.*

IT IS SO ORDERED.