No. 16-0127 – *Valentine & Kebartas v. Lenahan*

WORKMAN, J., dissenting:

**FILED**

**June 12, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Without even attempting to find support in precedent or reason, the majority reverses the trial court's verdict in direct contradiction of a universally-accepted rule pertaining to evidence from which intent may be inferred for purposes of unlawful debt collection practices. The majority's reversal of the trial court further insinuates itself into the purely factual issue of whether a debtor has proven intent relative to a violation of West Virginia Code § 46A-2-125 (1974). What the majority plainly believes, but disingenuously refuses to expressly state, is that call volume and frequency alone is insufficient evidence from which to infer intent for purposes of West Virginia Code § 46A-2-125(d). Despite characterizing this issue as one of "first impression," the majority issues no new syllabus point to this effect, undoubtedly because it flies directly in the face of all written authority and common sense. This extraordinary and stark departure from well-established federal caselaw interpreting our statute's federal counterpart creates an untenable situation where a debt collector's conduct may violate a federal statute, but not its virtually identical state equivalent. Because the majority's position is neither legally nor rationally sound, I respectfully dissent.

The debt collection provisions of the West Virginia Consumer Credit Protection Act's ("WVCCPA") are contained in West Virginia Code §§ 46A-2-122 through 129a. The pertinent provision provides:

1

No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

\*\*\*

(d) *Causing a telephone to ring* or engaging any person in telephone conversation *repeatedly or continuously*, or at unusual times or at times known to be inconvenient, *with intent to annoy, abuse, oppress or threaten any person at the called number.*

W. Va. Code § 46A-2-125(d) (emphasis added).[1] The Federal Debt Collection Practices Act's ("FDCPA") equivalent provision likewise prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The unmistakably plain language of both statutes clearly permit recovery based solely upon volume and/or frequency of calls placed to a debtor, so long as the fact-finder discerns sufficient evidence of intent to annoy, abuse, oppress, or harass.

Sitting as the trier of fact, the trial court below expressly found that petitioner caused respondent's telephone to ring with the intent to annoy, abuse, oppress or threaten respondent. More specifically, the trial court found that the volume, frequency, and pattern of calls provided sufficient evidence from which it discerned an

---

[1] The statute was subsequently amended in 2015. In this case, the 1974 version is the applicable statute.

intent to oppress and abuse as required by West Virginia Code § 46A-2-125(d). As carefully outlined by the trial court, the undisputed evidence establishes that petitioner caused respondent's telephone to ring 252 times over an eight-month period.[2] The trial court observed that after an initial two-week period of reasonable attempts to contact respondent, the petitioner immediately thereafter "ramped up its collection campaign," as follows:

> On March 26, 2012, [petitioner] placed six (6) calls to [] Mr. Lenahan, three (3) of which were separated by less than an hour. Like the 22 before it, these calls went unanswered. The next day, [petitioner] placed five (5) additional calls to Mr. Lenahan with as little as twenty-eight (28) minutes separating calls. None of these calls were answered. On the third day, March 28, 2012, [petitioner] again placed six (6) calls to Mr. Lenahan with some calls separated by only thirty-two (32) minutes.

From these facts, the trial court found that petitioner "increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him[.]"

The majority now reverses that finding and without any regard whatsoever for our standard of review, summarily declares that the call volume in this particular case is insufficient to establish evidence of intent. The majority inexplicably fails to state, as required by our standard of review, that the trial court's factual finding of intent was "clearly erroneous"; rather, it simply urges its disagreement with the trial court and

_____

[2] In view of the fact that a debt collector may, without violating the statute, make non-harassing telephone contact with a debtor, the trial court found that the first twenty-two calls, placed over a two-week period and which did not ever exceed three calls a day, lacked any intent to harass.

3

reverses on that basis with no explanation whatsoever as to why the particular call volume and frequency in this case was insufficient to establish a statutory violation.[3] This Court has made clear that "[f]ollowing a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous[.]" *Brown v. Gobble*, 196 W. Va. 559, 563, 474 S.E.2d 489, 493 (1996). Further,

> [i]t is well settled in this jurisdiction that in a case tried without the aid of a jury, *the trial court*, and not the appellate court, *is the judge of the weight of the evidence*. Actually, in a nonjury trial, the trial judge has usually been regarded as a surrogate for the jury, and his or her findings are accorded corresponding weight.

*Id.* at 565, 474 S.E.2d at 495 (emphasis added). To whatever extent the foregoing was not perfectly clear, the *Brown* Court sought to emphasize the sanctity of the trial court's findings upon a non-jury trial by quipping that "[w]e will disturb only those factual findings that strike us wrong with the 'force of a five-week-old, unrefrigerated dead fish.'" *Id.* at 563, 474 S.E.2d at 493 (quoting *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993), *cert. denied*, 514 U.S. 1010 (1995)). Apparently, however, despite

---

[3] The majority likewise curiously and tersely mentions that respondent "remained silent" and never advised petitioner "of the simple fact that he disputed the debt." On what basis it discerns a legal obligation on the part of a debtor to speak with a harassing debt collector and affirmatively disclaim the debt, the majority does not state. Despite the majority and petitioner's apparent belief to the contrary, the statute does not require that the recipient of the calls answer, that the debtor communicate at any time about the debt, or that any particular number, frequency, or pattern of calls exist. Rather, for purposes of this case, the statute unmistakably prohibits the mere causing of a telephone to ring repeatedly or continuously with the intent to annoy, abuse, oppress or threaten any person at the called number.

4

this unequivocal cautionary instruction, the majority sees fit to summarily disregard the trial court's assessment of the evidence and reverse the judgment entered below.

Furthermore, not only does the majority improperly invade the trial court's exclusive province to determine intent in this matter, it completely misrepresents the trial court's support for its findings. Despite the trial court's painstaking and detailed outline of the call activity which supported its conclusion that petitioner was "ramping up" its efforts from which it inferred intent to harass, the majority incredibly claims that the trial court referenced nothing other than the "number of telephone calls on [] three days[.]" As is obvious from its order, the trial court considered not mere volume, but rather the timing and repetitive nature of the calls including six calls in a day, with three separated by less than an hour, and five and six calls on consecutive days with such calls separated by roughly half an hour. This unrelenting re-dialing is exactly the type of evidence that other courts have found to be demonstrative of intent to harass. *See Kuhn,* 865 F. Supp. at 1453 (finding six phone calls in a span of twenty-four minutes constituted harassment); *Bingham v. Collection Bureau, Inc.* 505 F. Supp. 864, 873 (D.N.D. 1981) (holding that when call was terminated and the collection agency called back immediately, subsequent call alone could constitute harassment).

More to the point, however, the majority's reversal is obviously based upon its conclusion that call volume alone is insufficient as a matter of law. Throughout the majority opinion, it belabors the lack of additional evidence beyond call volume, stating

5

that respondent was "without other evidence," that the trial court "[r]el[ied] solely on the volume of telephone calls," that the "weight of federal authority requires some evidence of intent," that "[t]he record is devoid of any evidence contradicting V&K's stated intention," and that "some evidence of V&K's intent" was necessary. It criticizes the trial court's finding of intent stating that it was "based entirely on the volume of calls and no other evidence." Incredibly, the majority declares that federal caselaw "support[s] the conclusion that call volume alone absent other intent to annoy, abuse or harass is insufficient to sustain a claim[.]" Quite simply, this statement is patently incorrect, as evidenced by a legion of federal decisions and, remarkably, even the very case which the majority cites in support of this statement.

Federal courts have *uniformly* found that intent to harass pursuant to this prohibited debt collection practice may, in fact, be inferred strictly from the volume and/or pattern of the calls themselves. As explained by the Northern District of Illinois:

> Courts have generally considered two types of evidence of an intent to harass. First, where a plaintiff has shown that he asked the collection agency to stop calling or has informed the collection agency that it has the wrong number, and the collection agency nevertheless continued to call the plaintiff, courts have found intent. Second, *the volume and pattern of the calls may themselves evidence an intent to harass.*

*Hendricks v. CBE Grp., Inc.,* 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012) (citations omitted) (emphasis added). *See Chavious v. CBE Grp., Inc.,* No. 10-CV-1293 (JS) (ARL), 2012 WL 113509, at *2 (E.D.N.Y. Jan. 13, 2012) ("In evaluating whether

6

repeated phone calls were made 'with intent to annoy, abuse, or harass,' courts generally consider the volume and pattern of calls."); *Lynch v. Nelson Watson & Assocs., LLC*, No. 10-2025-EFM, 2011 WL 2472588, at \*2 (D. Kan. June 21, 2011) ("In determining liability, courts often consider the volume and pattern of calls sufficient to raise a triable issue of fact regarding intent to annoy abuse or harass."); *Hicks v. Am.'s Recovery Sols., LLC,* 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011) ("[A] court may consider the "frequency, persistence, and volume of the telephone calls" to determine intent[.]"); *Carman v. CBE Grp., Inc*., 782 F. Supp. 2d 1223, 1228 (D. Kan. 2011) ("In determining liability under [the FDCPA] courts often consider the volume and pattern of calls made to the debtor."); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1228 (E.D. Cal. 2010) ("Calling a debtor numerous times in the same day, or multiple times in a short period of time, can constitute harassment under the FDCPA."); *Pugliese v. Prof'l Recovery Serv., Inc*., No. 09–12262, 2010 WL 2632562, at \*9 (E.D. Mich. June 29, 2010) ("To determine whether Defendants' calls amount to harassment, annoyance or abuse, the volume of the calls must be examined along with the pattern in which they were made[.]"); *Majeski v. I.C. System, Inc.,* No. 08 CV 5583, 2010 WL 145861, at \*3 (N.D. Ill. Jan. 8, 2010) ("Actionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages"); *Bassett v. I.C. System, Inc.,* 715 F. Supp. 2d 803 (N.D. Ill. 2010) (finding that volume of calls over discrete period of time sufficient to raise an issue for trial); *Martin v. Select Portfolio Serving Holding Corp*., No. 1:05-cv-273, 2008 WL 618788, at \*6 (S.D. Ohio Mar. 3, 2008) ("In

7

determining whether the debt collector intended to annoy, abuse and harass the consumer, the Court may consider frequency, persistence, and volume of the telephone calls."); *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) ("Intent to annoy, abuse, or harass may be inferred from the frequency of calls, the substance of the calls, or the place to which phone calls are made."); *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *7 (E.D. Mich. Nov. 9, 2007) ("Repeatedly calling a number . . . may violate [the FDCPA]."); *Sanchez v. Client Servs., Inc.,* 520 F. Supp. 2d 1149, 1161 (N.D. Cal. 2007) ("[T]he frequency and volume of the telephone calls show that defendants intended to annoy, abuse and harass plaintiff[.]"); *Akalwadi v. Risk Mgmt. Alternatives, Inc*., 336 F. Supp. 2d 492, 505 (D. Md. 2004) ("Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls."); *Joseph v. J.J. MacIntyre Companies, L.L.C*., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002) (same); *Kuhn v. Account Control Tech., Inc*., 865 F. Supp. 1443, 1453 (D. Nev. 1994) (finding harassment where collector made six telephone calls in twenty-four minutes); *United States v. Central Adjustment Bureau, Inc*., 667 F. Supp. 370 (N.D. Tex. 1986), *aff'd*, 823 F.2d 880 (5th Cir. 1987) (finding harassment based upon four or five telephone calls to the same debtor in one day).

The reasoning behind the federal courts' universal agreement in this regard is obvious. A debtor could scarcely conjure up additional evidence of intent where he or she chooses not to engage an unrelenting and harassing debt collector by answering the

phone.  Obviously, where a debtor answers any of the collection calls and a debt collector is abusive or threatening, intent is fairly simple to ascertain.  However, where the debtor does not answer the calls and the only means of harassing the debtor is the very act of causing the telephone to ring, the only possible evidence of intent that the debtor could produce is the volume, frequency, and pattern of the calls themselves.  Without question, the statute prohibits simply "causing the telephone to ring . . . repeatedly or continuously" with an intent to "annoy, abuse, oppress or threaten[.]"  W. Va. Code § 46A-2-122(d).

In fact, the cases cited by both the majority and petitioner demonstrate that federal courts in West Virginia, interpreting the statute at issue, have applied precisely this rule.  Astonishingly, the very case relied upon *exclusively* by the majority expressly contradicts the majority's apparent belief that call volume alone is insufficient.  In *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 502 (S.D.W. Va. 2014) the District Court stated:  "The requisite intent to annoy, abuse, oppress, or threaten *can be established by the volume of telephone calls* or the nature of the telephone conversations." (emphasis added).  Despite acknowledging this statement in *Bourne*, the majority nevertheless states that *Bourne* cites cases which "have also found that call volume alone absent evidence of other abusive conduct is insufficient to sustain a claim[.]"  Not only does this contradict the express language in *Bourne* itself (which language the majority quotes), the *only* conclusion reached in the cases cited or discussed by *Bourne* is that the call volume in those particular cases was insufficient, in the opinion

9

of those courts, to evince an intent to harass.[4]  *Nowhere* in those cases do the courts hold that additional evidence was necessary.  To the contrary, federal courts have observed that "the nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass *without any other evidence of the debt collector's motive in calling*."  *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010) (emphasis added); *accord Durthaler,* 854 F. Supp. 2d at 489.

Furthermore, the majority makes reference to the *Bourne* court's passing reference to *Duncan v. J. P. Morgan Chase Bank, N. A.*, where additional evidence of intent, *i.e.* abusive language, was presented.  No. 5:10-cv-010149; 5:10-cv-01113, 2011

---

[4] The majority includes a quote from *Bourne* string citing cases where the specific call volume in those cases was insufficient to support a finding of intent.  Not only did these cases *not* state that additional evidence was necessary or that the absence of such was dispositive, but the volume described therein does not even come close to approximating the volume and repetitive manner of calling in the instant matter.  *See Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (finding average of one to two calls per day over limited periods of time insufficient volume alone to support violation); *Arteaga*, 733 F. Supp. 2d at 1229 (finding that "daily" or "nearly daily" phone calls alone are insufficient to support violation); *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (finding average of three calls per day "somewhat high" but insufficient to find violation ); *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d 485 (S.D. Ohio 2012) (finding no FDCPA violation where average of one call every two days); *Katz v. Capital One*, No. 1:09-cv-1059, 2010 WL 1039850 (E.D. Va. March 18, 2010) (finding no more than two calls a day insufficient to prove violation).  As noted above, on three successive days, petitioner called respondent 5-6 times each day at intervals close in time.  Petitioner called respondent 252 calls over an eight-month period and as many as 54 times in a single month.  For obvious reasons, the majority undertakes no analysis of the pattern and frequency of calls in this matter as compared with the calls in the cited cases.

10

WL 5359698 (S.D.W. Va. Nov. 4, 2011). The majority emphasizes, without analysis, the *Bourne* court's reference to the existence of additional evidence of intent in *Duncan*. However, the fact that additional evidence happened to exist in that case does not support the majority's illogical leap that the court found such additional evidence *necessary* to find a violation. In fact, the *Duncan* court expressly acknowledged that volume alone can support a violation: "The plain language of [W. Va. Code § 46A-2-125(d)] aptly sets forth that a statutory violation can be bourne [sic] from the mere volume of calls placed to a debtor." [5] *Id*. at *4. More specifically, the *Duncan* court correctly noted that "a Court can glean 'intent' from the continuous nature of the calls by highlighting a distinctive pattern, such as the number of calls placed in one day, or the time in which those calls were placed" and expressly declined "to find that 'something more' or a 'volume plus' type of analysis is required to demonstrate a violation of [West Virginia Code § 46A-]2–125(d)[.]" *Id*.

---

[5] *See also Ferrell v. Santander Consumer USA, Inc*., 859 F. Supp. 2d 812, 818 (S.D.W. Va. 2012) (denying summary judgment to debt collector based on "sheer volume of the calls"). I note further that federal district court cases cited by petitioner where summary judgment was granted to the debt collector are plainly distinguishable and/or bear little factual similarity to the case *sub judice*. *See Adams v. Chrysler Fin. Co., LLC*, 2013 WL 1385407 (S.D.W. Va. April 3, 2013) (granting summary judgment to debt collector where debtor failed to allege any actions prohibited by Section 125(d) and further failed to respond to motion for summary judgment); *White v. Ally Fin., Inc*., 2013 WL 1857266 (S.D.W. Va. May 2, 2013) (granting summary judgment to debt collector where only evidence of intent was that debt collector was attempting to identify estate representative and stopped calling once information was provided).

11

Having established the universally-recognized rule that intent to annoy, abuse, oppress, or harass may clearly be inferred from pattern, volume, and/or frequency of calls, it is equally clear that there is no particular threshold of calls which much be exceeded to violate the statute. Critically, "there is no bright line rule regarding the number of calls which creates the inference of intent." *Hicks*, 816 F. Supp. 2d at 515. Accordingly, it is obvious that such an issue is exclusively one for the trier of fact—in this case, the trial court. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1179 (11th Cir. 1985); *see also Hendricks*, 891 F. Supp. 2d at 896 ("Whether or not the volume and pattern of calls is indicative of an intent to harass is often a question for the jury."); *Pace v. Portfolio Recovery Assocs., LLC*, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012), *aff'd*, 512 F. App'x 643 (8th Cir. 2013) (same); *Carman,* 782 F. Supp. 2d at 1230 ("[T]he reasonableness of the volume and pattern of telephone calls is a question of fact best left to a jury."); *Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C*., Civil Action No. 08-5923, 2009 WL 4396299 (E.D. Pa. Dec. 1, 2009) (finding whether pattern of calls was sufficiently harassing was issue for jury); *Akalwadi*, 336 F. Supp. 2d at 506 ("The reasonableness of this volume of calls and their pattern is a question of fact for the jury."); *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1360 (M.D. Fla. 2000) ("[T]he inquiry into whether a debt collector's procedures are reasonable is, "by its nature, fact-intensive, and should therefore typically be left to the jury[.]" (quoting *Narwick v. Wexler,* 901 F. Supp. 1275, 1282 (N.D. Ill. 1995))). The majority provides absolutely no support whatsoever

12

for its unprecedented conclusion that a certain type of evidence is *per se* insufficient to establish the highly fact-specific issue of intent.

Finally, in its somewhat cryptic closing analysis, the majority discusses petitioner's "stated intention" and "unrefuted evidence of [petitioner's] intent to collect the debt." Although difficult to surmise, the majority appears to be asserting that since petitioner established that its "intent" was merely to collect a debt, rather than to harass, the trial court erred in finding for respondent. The nonsensical and circular reasoning employed by the majority in this regard further illustrates the error of its resolution. Unquestionably, a debt collector accused of violating West Virginia Code § 46A-2-122(d) will *necessarily* be attempting to collect a debt. In fact, attempting to collect a debt is a necessary prerequisite to bringing an action: "[A] threshold requirement for application of [a debt collection practices act] is that prohibited practices are used in attempt to collect a "debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994). What West Virginia Code § 46A-2-122 and its federal equivalent seek to prohibit is the use of harassing or abusive practices *while attempting to collect a debt*. Therefore, the majority's confounding conclusion that petitioner may evade a violation of the statute by simply claiming that it was merely trying to collect the debt or reach the debtor is fairly absurd and further underscores the majority's complete failure to comprehend the activity which the statute seeks to prohibit.

13

To be clear, the majority's reversal of this matter is not only without analytical or precedential support, but effectively guts the import of the statute. Under the majority's analysis, a debt collector could conceivably cause a debtor's telephone to ring every five minutes into perpetuity and not run afoul of the statute. In that event, under the majority's analysis, the sheer volume and frequency of the calls are insufficient, without more, to establish intent to harass. What type of "other evidence" is needed or how a debtor could obtain such "other evidence" of intent to harass, the majority does not explain. Rather, it places an impossible burden upon a debtor to adduce "other evidence"—aside from the plainly harassing volume and frequency of calls themselves—of an intent to harass. In so doing, the majority has eviscerated the "causing a telephone to ring" prohibition of subsection (d) in its entirety.

Because this complete departure from the overwhelming consensus of courts addressing this issue is entirely unsupported by the majority's scant and illogical analysis, I respectfully dissent. I am authorized to state that Justice Davis joins me in this dissent.